**Boris MOGILEVSKY, Plaintiff,**

v.

**BALLY TOTAL FITNESS CORPORATION Defendant.**

**No. CIV.A. 01–11240–WGY.**

United States District Court, D. Massachusetts.

May 13, 2003.

Harvey S. Shapiro, Boston, for Boris Mogilevsky, Plaintiff.

Brian E. Whiteley, Scibelli & Whiteley, LLP, Boston, for Bally Total Fitness Corp., Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

The plaintiff, Boris Mogilevsky ("Mogilevsky"), has brought claims regarding unpaid wages against his former employer, Bally Total Fitness ("Bally"), pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.;* Mass. Gen. Laws ch. 151, § 1A; Mass. Gen. Laws ch. 149, § 148; and the common law. The Court held a bench trial on Mogilevsky's claims in September 2002.

On September 27, 2002, upon the conclusion of the bench trial, the Court entered certain findings of fact. Specifically, the Court found by a fair preponderance of the evidence that Mogilevsky's personal calendars constituted persuasive evidence of his work schedule and that Bally's payroll documents and coupon tracking records constituted persuasive evidence as well. 9/27/02 Tr. at 3, 7. The Court rejected, however, Mogilevsky's argument that his damages should be based on the theory that he possessed 287 coupons reflecting entirely unpaid hours for which he deserved to be paid at the overtime rate. *Id.* at 9. The Court directed the parties to reconstruct the hours actually worked by Mogilevsky at all material times, based on his calendars, and to inform the Court of any differences as to interpretation so that the Court could make the appropriate findings with respect to back pay owed to Mogilevsky. *Id.* at 4.

After receiving both parties' supplemental memoranda, as well as the parties' joint stipulation, the Court concluded that further briefing was required from the parties with respect to Mogilevsky's calendars. The Court directed the parties to confer with respect to any pay period for which they reached a different number of hours worked by Mogilevsky and then to provide a supplemental briefing to the Court, identifying all such pay periods and the specific entries within those periods that were disputed. February 13, 2002 Mem. and Order [Docket No. 52] at 3. The Court explained that, based upon these submissions, it would calculate the back pay owed to Mogilevsky by determining the difference between the number of hours it found Mogilevsky to have worked and the number of hours for which Mogilevsky was paid. *Id.* at 2. The parties have now provided these submissions and the Court now calculates the damages owed to Mogilevsky.

## II. DISCUSSION

### A. Relevant Statutes of Limitations for Mogilevsky's Claims

■ The Court begins by noting that the hours in question accrued between January 1998 and December 1999. Mogilevsky filed the instant action on May 18, 2001. The Fair Labor Standards Act sets forth a two-year statute of limitations, unless the employer's violation was willful, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a). The analogous Massachusetts statute simply provides for a two-year

statute of limitations for recovery. Mass. Gen. Laws ch. 151, § 20A.

The Supreme Court has stated that an employer's violation is willful within the meaning of the Fair Labor Standards Act when it can be shown that the employer knew, or recklessly disregarded, that it was acting in violation of the Act. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Here, the Court rules that although Bally's failure to pay Mogilevsky his proper wages may well have been negligent, that failure does not rise to the level of reckless disregard, given the lack of clarity in Mogilevsky's own records and his unorthodox approach to scheduling training sessions. Accordingly, the appropriate statute of limitations period for Mogilevsky's claims under both the Fair Labor Standards Act and Chapter 151 is two years.

The question remains, however, whether Mogilevsky can recover for the hours that accrued prior to May 18, 1999. With respect to these hours, there are two theories under which Bally can potentially be held liable: (1) Mogilevsky's claim under Mass. Gen. Laws ch. 149, § 148, which provides a three-year statute of limitations for claims involving the non-payment of wages, *id.* at § 150; and (2) Mogilevsky's common law breach of contract claim, which carries a six-year statute of limitations pursuant to Mass. Gen. Laws ch. 260, § 2.

■ The Court rules that a common law breach of contract claim is inapplicable here. The documents that Mogilevsky cites as giving rise to this "contract"—the Employee Information and Acknowledgment Form and the Employee Handbook, *see* Pl.'s Supplemental Post–Trial Mem. [Docket No. 55] at 6–7,—simply contain what are essentially promises to adhere to federal and state law regarding the payment of overtime wages. *See* Employee Information and Acknowledgment Form (Trial Ex. 1) ("Federal and State Wage and Hour Laws require the maintenance of accurate pay records and the payment of overtime to each 'non-exempt' employee who *works* in excess of 40 hours in any single week." "When the total hours in a given work week exceed 40 hours worked, you will be paid time and a half for all hours in excess of 40 hours worked during that single week."); June 1999 Employee Handbook (Trial Ex. 4) at 16 ("For non-exempt employees who are eligible for overtime [time-and-a-half], overtime is generally defined as hours worked in excess of forty [40] hours in the Bally designated work week. As different states may have different definitions of this time, you should ask your supervisor what standard applies.").

The Employee Handbook further included, on the page containing a line for the employee's signature, a clear disclaimer that the handbook was not intended to form a separate contract as well as a statement that "all of the provisions of the handbook ... are only guidelines." *Id.* at 53. Massachusetts courts have so recognized the legal effect of employee manuals. *See O'Brien v. New England Telephone & Telegraph Company*, 422 Mass. 686, 693, 664 N.E.2d 843 ("Of course, the provisions of a personnel manual on analysis may grant no rights. [*Jackson v. Action for Boston Cmty. Dev., Inc.*, 403 Mass. 8, 525 N.E.2d 411 (1988)] noted that, if the manual states that it provides only guidance as to the employer's policies ..., it may not create any enforceable rights."); *cf. Ferguson v. Host Int'l, Inc.*, 53 Mass.App.Ct. 96, 103, 757 N.E.2d 267 (2001) (holding that where the disclaimer provisions in the employee manual "properly could be viewed by the fact finder as the functional equivalent of fine print," they did not pre-

vent the formation of a contract). The Court thus rules that the personnel documents were not contracts and do not give rise to a cause of action apart from the federal and state causes of action arising from Bally's failure to pay Mogilevsky the wages to which he was legally entitled.

As such, the only law governing the period prior to May 18, 1999 is Mass. Gen. Laws c. 149, § 148, which provides for a three-year statute of limitations. Accordingly, Mogilevsky cannot recover for unpaid wages that accrued prior to May 18, 1998. In short, the Fair Labor Standards Act governs the period from May 18, 1999 to December 31, 1999;[1] Mass. Gen. Laws c. 149, § 148 governs the period from May 18, 1998 to May 17, 1999.

### B. Mogilevsky's Damages from May 18, 1999 to December 31, 1999

The Court thus proceeds to calculate the damages owed to Mogilevsky for each of these two periods. The Court begins with the period from May 18, 1999 to December 31, 1999, that is, the period covered by the Fair Labor Standards Act. During that period, Mogilevsky alleges that he worked 235 hours of overtime.[2] Pl.'s Supplemental Post–Trial Mem., Ex. B. Bally presses a dispute as to only six of those hours: five hours that Mogilevsky alleges he worked on July 31 and one hour that Mogilevsky alleges he worked on August 9. Def.'s Supplemental Br. [Docket No. 54] at 2, Ex. 59K–32, 59K–34 (attached with red and blue markings to indicate disputed entries). The Court agrees with Bally that these hours should not be counted toward Mogilevsky's total, given that he drew a large "Z" over the five hours on July 31 and that the disputed entry on August 9 appears to fill up only one line, with only one letter (as well as an illegible scrawl) extending into a second line.

That leaves 229 overtime hours worked by Mogilevsky between May 18, 1999 and

---

1. In addition to violating the Fair Labor Standards Act, Bally's failure to pay Mogilevsky for his overtime hours during this period also simultaneously violated the Massachusetts analogue to the Fair Labor Standards Act: Mass. Gen. Laws ch. 151, § 1A. The Court proceeds under the Fair Labor Standards Act in computing Mogilevsky's damages because the Fair Labor Standards Act imposes a less stringent standard for the imposition of multiple damages and is thus more favorable to Mogilevsky. Under the Fair Labor Standards Act, 29 U.S.C. § 216(b), liquidated damages are available unless the employer can show that it acted reasonably and in good faith. *See, e.g., McLaughlin v. Hogar San Jose, Inc.,* 865 F.2d 12, 13–14 (1st Cir.1989); *Andrews v. DuBois,* 888 F.Supp. 213, 221 (D.Mass.1995) (noting that "it is theoretically possible that an employer's conduct may be held not to be willful (for the purposes of ascertaining the appropriate limitations period), while at the same time an employer may be unable to meet his burden of proving good faith and reasonableness (for the purposes of determining whether liquidated damages are appropriate)"). By contrast, the Supreme Judicial Court has ruled that in claims brought under Mass. Gen. Laws c. 151, § 1A, multiple damages—which are "essentially punitive in nature"—are available only if the defendant intentionally or willfully violated Massachusetts law, its conduct was "evil in motive," or if its conduct "showed a reckless indifference to the rights of others." *Goodrow v. Lane Bryant, Inc.,* 432 Mass. 165, 178–79, 732 N.E.2d 289 (2000).

2. The Court reaches this number with reference to Column D of the chart provided by Mogilevsky. Pl.'s Supplemental Post–Trial Mem., Ex. B. The Court has calculated the sum of the overtime hours Mogilevsky alleges he worked during the pay periods spanning from May 21, 1999 to December 30, 1999. Because May 18, 19, and 20 fell within the previous pay period, and because overtime is calculated with reference to biweekly pay periods, the Court allocates 3/14 of Mogilevsky's 25 overtime hours for that period (which totals 5.4, rounded to 5) to the post-May 17 count, and the remaining 20 hours (11/14 of 25) to the pre-May 18 count.

December 30, 1999. Mogilevsky concedes that he was fully paid for 82 of those hours.[3] Pl.'s Supplemental Post–Trial Mem. at Ex. B. As for the remaining 147 hours, it remains somewhat unclear to this Court which hours were paid at the standard (rather than overtime) rate and which, if any, were entirely unpaid. Mogilevsky's revised chalk B–3 indicates that during the period from May 18, 1999 to December 31, 1999, he was paid for *198* overtime hours at the standard rate (62 hours during the post-May 17 subpart of the second quarter, 68 hours during the third quarter, and 68 hours during the fourth quarter).[4] Pl.'s Further Argument, Analysis, and Post–Trial Stipulations [Docket No. 50], Ex. B. The Court concludes, in its capacity as fact-finder, that this is the most likely interpretation and

thus rules that Mogilevsky is entitled to the difference between 147 hours paid at the overtime rate (which is what he should have received) and 198 hours paid at the standard rate (which is what he apparently did receive).

To determine the amount that Mogilevsky should have received for those 147 hours, the Court must further break those hours down by quarter, since his overtime rate should have varied by quarter depending on his commissions for that quarter. It appears that 41[5] of those hours were worked between May 18, 1999 and July 1, 1999 (approximately the second half of the second quarter), during which Mogilevsky's overtime rate should have been $32.94 (150% of $21.96[6]), for a total of $1350.54. It further appears that 46[7] of

3. The Court reaches this figure by adding up the entries in Column E of the 1999 chart provided by Mogilevsky. Pl.'s Supplemental Post–Trial Mem., Ex. B. Again, as for the pay period from May 7 to May 20, which spans the crucial May 18 dividing line, the Court multiplied the total number of overtime hours paid (10) by 3/14 to determine the number attributable to May 18, 19, and 20, which comes out to two paid hours for that two-week interval. Thus, for the relevant part of the second quarter, Mogilevsky was fully paid for 32 hours. For what is roughly the third quarter (July 2, 1999 to September 23, 1999), Mogilevsky was fully paid for 45 hours. For what is roughly the fourth quarter (September 24, 1999 to December 30, 1999), Mogilevsky was fully paid for five hours.

4. The chalk is ambiguous in that it is divides 1999 into four quarters and further splits the second quarter—which spans the crucial May 18 dividing line—into two subsets: the first subset ending May 17, and the second subset beginning May 18. *See* Pl.'s Revised Chalk B–3 for 1999 (included in Ex. B to Pl.'s Further Argument, Analysis, and Post–Trial Stipulations [Docket No. 50] ). This would be helpful to the Court were it not for the fact that the period beginning May 18 is entitled "5/18–*12*/31." It seems to the Court, looking at the chart in context, that this is a typographical error, and that the period should

instead be entitled 5/18 to *6*/31, given that it refers to a subset of the *second quarter* of the 1999 year. This interpretation is bolstered by the fact that the chart then provides numbers for the third and fourth quarters and adds up all of the numbers to provide a "total for 1999."

5. The Court reaches this number on the basis of Column F of Mogilevsky's chart for 1999. Pl.'s Supplemental Post–Trial Mem., Ex. B. With respect to the 15 unpaid hours that span the period from May 7 to May 20, the Court attributes three of those hours (3/14 of 15) to May 18, 19, and 20, and the remaining twelve hours to the pre-May 18 period.

6. This number is reached by adding Mogilevsky's standard hourly rate ($19.00) to the additional amount that takes into account his commissions for that quarter ($2.96). *See* Pl.'s Revised Chalk B–3 for 1999 (included in Ex. B to Pl.'s Further Argument, Analysis, and Post–Trial Stipulations).

7. Again, the Court reaches this number with reference to Column F. With respect to the pay period from July 30, 1999 to August 18, 1999, the Court must make an adjustment to reflect its finding that Mogilevsky did not work the six hours disputed by Bally. Accordingly, for that period, although Mogilev-

those hours were worked between July 2, 1999 and September 23, 1999 (roughly the third quarter), during which Mogilevsky's overtime rate should have been $32.96 (150% of $21.97[8]), for a total of $1516.16. Finally, it appears that the remaining 60 hours were worked between September 24, 1999 and December 30, 1999 (roughly the fourth quarter), during which Mogilevsky's hourly rate should have been $39.63 (150% of $26.42[9]), for a total of $2377.80. This results in a total of $5244.50. The record indicates, however, that Bally only paid Mogilevsky $3762.00 for those hours.[10] This means that Mogilevsky is owed $1482.50 in back pay for the period from May 18, 1999 to December 30, 1999, pursuant to the Fair Labor Standards Act.

■ Moreover, with respect to this payment of $1482.50 that Bally owes Mogilevsky under the Fair Labor Standards Act, the Court rules that Mogilevsky is entitled to liquidated damages—that is, an additional equal amount. Although Bally's failure to comply with the Fair Labor Standards Act was not willful or reckless, the Court rules, on the basis of the evidence presented at the bench trial, that Bally cannot meet its burden of proving good faith and reasonableness as it must do to avoid liquidated damages. *See* 29 U.S.C. § 216(b); *McLaughlin,* 865 F.2d at 13. First, the Court found at the conclusion of the bench trial that Bally issued mandates

of "no overtime" when it should have known that professional trainers had already booked overtime and that—more specifically—Mogilevsky's own supervisors knew that Mogilevsky would have to work overtime in some such instances. 9/27/02 Tr. at 6. Moreover, the Court also found that, at the Bally gym where Mogilevsky worked, there was a practice—albeit one not condoned by the company—by trainers of passing their sales to each other in order to meet certain targets. *Id.* at 7. Based on these findings, the Court concludes that liquidated damages are warranted and that Mogilevsky is entitled to an additional equal amount, for a total of $2965.00 in damages under the Fair Labor Standards Act.

### C. Mogilevsky's Damages from May 18, 1998 to May 17, 1999

The Court now moves back to the period for which Mogilevsky is entitled to back pay under Mass. Gen. Laws c. 149, § 148: namely, the period from May 18, 1998 to May 17, 1999. Here, the Court rules that Mogilevsky is entitled to recover only at the standard rate—not the overtime rate—for any hours for which he received no compensation whatsoever. For those hours in which he was compensated at the standard rate rather than the overtime rate, he is not entitled to the difference. Providing him with compensation for en-

---

sky avers that he had nine hours of unpaid overtime, the Court reduces that number to three.

**8.** Again, the Court reaches this number by adding Mogilevsky's standard hourly rate ($19.00) to the rate reflecting his commissions for the third quarter ($2.97). *See* Pl.'s Revised Chalk B–3 for 1999 (included in Ex. B to Pl.'s Further Argument, Analysis, and Post–Trial Stipulations).

**9.** The Court again reaches this number by adding Mogilevsky's standard hourly rate (19.00) to the rate reflecting his commissions

for the fourth quarter ($7.42). *See* Pl.'s Revised Chalk B–3 for 1999 (included in Ex. B to Pl.'s Further Argument, Analysis, and Post–Trial Stipulations).

**10.** The Court reaches this number on the basis of Columns B and C of Mogilevsky's Revised Chalk B–3 for 1999 (included in Ex. B to Pl.'s Further Argument, Analysis, and Post–Trial Stipulations). These columns indicate that during the period from May 18, 1999 to December 31, 1999, Bally paid him for 198 coupons at a rate of $19.00 per coupon.

tirely unpaid hours prior to May 18, 1999 at the overtime rate rather than the standard rate—or with additional compensation for hours that were paid at the standard rather than the overtime rate—would essentially eviscerate the distinction between the two-year statute of limitations for the failure to pay overtime hours at the overtime rate, Mass. Gen. Laws c. 151, § 20A, and the three-year statute of limitations for the failure to pay wages altogether, Mass. Gen. Laws c. 149, § 150.

The Court thus proceeds to determine whether there were any hours for which Mogilevsky received *no* compensation during the period from May 18, 1998 to May 17, 1999; if so, he would be entitled to compensation at the standard rate for those hours. With respect to the relevant period in 1998, Mogilevsky alleges that he worked 195 overtime hours.[11] Of these, Bally disputes only seven, all arising in the pay period from October 9, 1998 to October 22, 1998. Def.'s Supplemental Br. at 2; Ex. 59J–44, 59J–45 (attached with red and blue markings to indicate disputed entries). Of these, the Court agrees that six should not be counted: the entry on October 13, which is crossed out; the four entries on October 14, which have a Z over

them, and the entry on October 20, which is essentially a blank line. The Court will, however, count the disputed entry on October 17. That leaves the Court with 189 overtime hours worked by Mogilevsky. Mogilevsky's Revised Chalk B–3 for 1998 is again ambiguous, but this Court finds the most reasonable interpretation to be that he was paid for *216.5* overtime hours at the standard rate in the period spanning from May 18, 1998 to December 30, 1998 (75 hours during the post-May 17 subpart of the second quarter, 84.5 hours during the third quarter, and 57 hours during the fourth quarter). *See* Pl.'s Revised Chalk B–3 for 1998 (included in Ex. B to Pl.'s Further Argument, Analysis, and Post–Trial Stipulations). Accordingly, the Court does not find that there are any hours between May 18, 1998 and December 30, 1998 for which Mogilevsky received no compensation whatsoever. Thus, he is not entitled to any back pay for this period.

With respect to the period between January 1, 1999 and May 17, 1999, Mogilevsky states that he worked 224[12] hours of overtime and concedes that he was paid for 25[13] of those hours at the overtime rate.

11. The Court bases this calculation on Column D of the 1998 chart furnished by Mogilevsky. *See* Pl.'s Supplemental Post–Trial Mem., Ex. A. Column D lists "unpaid overtime" rather than "all overtime hours," but because Mogilevsky alleges that he received no payment for *any* overtime hours in 1998 (apart from 1.5 hours that were not included in Column D), that distinction is meaningless. *See id.* at n. 6.

12. The Court bases this calculation on Column D of the 1999 chart furnished by Mogilevsky. Pl.'s Supplemental Post–Trial Mem., Ex. B. During this period, Mogilevsky states that he worked 229 hours between January 1 and May 20. Of these, 204 accrued prior to the May 7—May 20 pay period; the remaining 25 accrued during that period. Because the relevant period only extends until May 17,

the Court multiplies the 25 hours accruing in that period by 11/14ths, yielding a result of 20 hours. As such, the Court determines that Mogilevsky worked 224 overtime hours between January 1 and May 17, 1999.

13. The Court bases this calculation on Column E of the 1999 chart furnished by Mogilevsky. Pl.'s Supplemental Post–Trial Mem., Ex. B. During this period, Mogilevsky states that he was paid for 17 hours between March 12 and March 18 and 10 hours between May 7 and May 20. Because the relevant period only extends until May 17, the Court multiplies the 10 paid hours in the latter period by 11/14ths to reflect the proper apportionment of hours: 8 hours. Therefore, Mogilevsky was paid for 25 hours of overtime, at the overtime rate, in the relevant portion of 1999.

Bally does not dispute this calculation. That leaves 199 hours. Mogilevsky's revised chalk B–3, however, indicates that during the period from January 1 to May 17, 1999, he was paid for 227 overtime hours at the standard rate (144 hours during the first quarter, and 83 hours during the pre-May 18 subpart of the second quarter). *See* Pl.'s Revised Chalk B–3 for 1999 (included in Ex. B. to Pl.'s Further Argument, Analysis, and Post–Trial Stipulations). Accordingly, the Court does not find that there are any hours between January 1, 1999 and May 17, 1999 for which Mogilevsky received no compensation whatsoever. As such, he is not entitled to back pay for this period.

### D. Vacation Pay and Commissions

Two final matters remain. First, this Court finds that Mogilevsky accrued 72 hours of vacation time in 2000 but was not paid for them. *See* Trial Chalk B–4. The Court thus rules that Mogilevsky is entitled to be paid for that time at a rate of $6 per hour—which this Court finds, based upon the evidence, to be the standard rate that Bally pays for such vacation time [14]—for a total of $432.

Second, the Court also ruled upon the close of the bench trial that Bally violated the Fair Labor Standards Act by not factoring Mogilevsky's commissions into the amounts used to calculate his overtime rate in 1999 and 2000. 9/27/02 Tr. at 9. Pursuant to this violation, Mogilevsky is entitled to the difference between the overtime rate that he *did* receive and that he *should have* received for all of the overtime payments that Bally made to him.

The Court makes that assessment for each quarter because, as noted above, Mogilevsky's commissions varied by quarter. During the subset of the second quarter of 1999 that falls within the two-year statute of limitations, an additional $2.96 should have been added to Mogilevsky's standard rate (for the purposes of computing his overtime) to reflect his commissions. That amount then must be multiplied by 150% to account for the fact that he was working overtime and thus entitled to time-and-a-half pay. Thus, Mogilevsky should have been paid an additional $4.44 for each of the 32 [15] overtime hours for which he received payment in this quarter, for a total of $142.08. Similarly, during the third quarter of 1999, Mogilevsky should have been paid an additional $4.46 (150% of $2.97) for each of the 45 [16] overtime hours for which he received payment in this quarter, for a total of $200.70. During the fourth quarter of 1999, Mogilevsky should have been paid an additional $11.13 (150% of $7.42) for each of the five [17] overtime hours for which he received payment in this quarter, for a total of $55.65. During the first quarter of 2000, Mogilevsky should have been paid an additional $2.88 (150% of $1.92 [18]) for each

---

**14.** The Employee Handbook itself stated simply that "[v]acation pay shall be paid only on base pay. It shall not include any commission, bonuses, overtime, etc." June 1999 Employee Handbook (Trial Ex. 4). At trial, evidence was adduced that it is Bally's practice to pay vacation to trainers at the service rate of $6.00 per hour and that this was, in fact, the rate at which Mogilevsky was paid for vacation time throughout his tenure at Bally.

**15.** *See supra* note 3.

**16.** *See supra* note 3.

**17.** *See supra* note 3.

**18.** The Court bases the following commission rates upon Mogilevsky's calculation of his 2000 commissions, as set forth in Trial Ex. 79–5. Bally apparently does not dispute these numbers.

of the 65 [19] overtime hours he was paid, for a total of $187.20. During the second quarter of 2000, Mogilevsky should have been paid an additional $9.32 (150% of $6.21) for each of the 41 overtime hours for which he was paid, for a total of $382.12. During the third quarter of 2000, Mogilevsky should have been paid an additional $7.14 (150% of $4.76) for each of the 19 overtime hours for which he was paid, for a total of $135.66. Finally, during the fourth quarter of 2000, Mogilevsky should have been paid an additional $6.68 (150% of $4.45) for each of the 10 hours he worked, for a total of $66.80. This adds up to a total of $1170.21 by way of commissions that should have been factored into Mogilevsky's overtime pay during 1999 and 2000.

In total, therefore, Mogilevsky is entitled to (1) $2965.00 for his unpaid overtime that accrued between May 18, 1999 and December 31, 1999; (2) $432.00 for his unpaid vacation time; and (3) $1170.21 for the commissions that should have been taken into account in determining his overtime rate for the overtime payments that he received in 1999 and 2000. This results in a sum total of $4567.21. Bally is therefore ordered to pay $4567.21 to Mogilevsky, pursuant to the Fair Labor Standards Act and Mass. Gen. Laws ch. 149, § 148.

SO ORDERED.

**19.** The Court bases the following hours paid by Bally upon those set forth in Bally's Supplemental Proposed Findings of Fact and Rulings of Law Relating to Damages [Docket No. 45] at 14. Mogilevsky apparently does not dispute these numbers.