# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

## OF

## MASSACHUSETTS

---

CHARLES EDWARD CROCKER & another[1] vs. TOWNSEND
OIL COMPANY, INCORPORATED, & others.[2]

Essex. September 4, 2012. - December 17, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Wage Act. Practice, Civil,* Statute of limitations. *Limitations,
Statute of. Employment,* Severance agreement. *Contract,* Employment,
Release from liability. *Release.*

This court concluded that employees' claims for unpaid overtime compensa-
tion, although barred by the two-year statute of limitations under G. L.
c. 151, § 20A, could nevertheless be asserted under the Wage Act, G. L.
c. 149, §§ 148 and 150, limited, however, to recovery of uncompensated
time worked at the regular rate, subject to the three-year statute of limita-
tions under the Wage Act. [5-7]
In a civil action brought in Superior Court in which the plaintiff home heating
oil delivery truck drivers contended that they were owed compensation

---

[1]Joseph Barrasso.
[2]Mark Townsend and Jim Townsend.

based on their proper classification as the defendant's employees, under the Wage Act, G. L. c. 149, §§ 148 and 150, rather than as independent contractors, the statute of limitations was not tolled by operation of the discovery rule, where, given the express restrictions and requirements contained in the contract carrier agreements between the parties, the plaintiffs were possessed of all facts necessary to conclude that they might qualify as employees [7-8]; or by fraudulent concealment, where the facts surrounding the nature of the employment relationship were known to all parties at all relevant times [8-10]; further, the continuing violation doctrine did not extend to the plaintiffs' claims, and accordingly, recovery was limited to those damages that occurred within the three-year period prior to the filing of the complaint [10-12].

This court concluded that a settlement or contract termination agreement by an employee that includes a general release purporting to release all possible existing claims will be enforceable as to the statutorily provided rights and remedies conferred by the Wage Act, G. L. c. 149, §§ 148 and 150, only if so stated in clear and unmistakable terms, i.e., the release must be plainly worded and understandable to the average individual and specifically refer to the rights and claims under the Wage Act that the employee is waiving. [12-15]

CIVIL ACTION commenced in the Superior Court Department on December 18, 2009.

The case was heard by *Howard J. Whitehead*, J., on a motion for summary judgment; a motion to vacate entry of summary judgment was heard by *David A. Lowy*, J.; motions to amend the complaint and for summary judgment were heard by *Howard J. Whitehead*, J.; and the matter was reported by *Timothy Q. Feeley*, J., to the Appeals Court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Valeriano Diviacchi* for the plaintiffs.

*Kurt B. Fliegauf* for the defendants.

CORDY, J. In this case, we consider an employment dispute arising under G. L. c. 149, §§ 148 and 150 (Wage Act), between the defendant, Townsend Oil Company, Incorporated (Townsend), a home heating oil company, and the plaintiffs, Charles Edward Crocker (Crocker) and Joseph Barrasso (Barrasso), two former delivery truck drivers. The plaintiffs contend that they are owed compensation (including overtime pay) based on their proper classification as "employees" (rather than independent contractors) under the Wage Act. Townsend responds that the

plaintiffs' claims are barred by the statute of limitations and, alternatively, that a general release contained in contract termination agreements entered into by the parties nevertheless defeats the plaintiffs' Wage Act claims. A Superior Court judge stayed the proceedings and reported the statute of limitations and general release issues that had previously been the subject of rulings in that court to the Appeals Court pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996). We transferred the case to this court on our own motion.

We conclude that the statute of limitations applicable to the Wage Act claims does not bar the plaintiffs from recovering compensation earned for the hours they worked, including the overtime hours they worked but for which they were not paid, only during the three years preceding the filing of suit. Because the claims are not completely barred, we also reach the more substantive question, whether a general release contained in a termination agreement operates to release an employee's Wage Act claims. In light of the important public policy considerations underlying the Wage Act, we conclude that although claims arising thereunder may be released retrospectively as part of a settlement agreement,[3] such a release is valid only if it is voluntary and knowing, and, more specifically, absent express language that Wage Act claims are being released, a general release is ineffective to waive them.

1. *Background.* Townsend is a Massachusetts corporation in the business of delivering home heating oil to customers throughout northeastern Massachusetts. It employs drivers to operate the company's delivery trucks; these drivers are paid by the hour and receive overtime pay when applicable. In addition, Townsend also hires independent contractors to work as delivery drivers. These drivers are paid based on the amount of oil they deliver to customers and do not receive an hourly wage or overtime pay from Townsend. The independent contractors are required to purchase and maintain their own delivery trucks at their own expense, but those trucks must bear Townsend's

---

[3] We take this view only with respect to potential Wage Act claims existing at the time of the agreement containing the release. We do not consider in this case releases or waivers of prospective Wage Act claims, a matter far more problematic under the special contracts provisions of the Wage Act.

insignia. All drivers, whether employees or independent contractors, deliver oil to Townsend customers according to Townsend's delivery schedule and at prices set by Townsend.

The plaintiffs were putatively hired by Townsend as independent contractor delivery drivers. Crocker was hired in 1999; Barrasso was hired in 2002. The plaintiffs each signed a contract carrier agreement with Townsend that established the terms of their relationships. Those agreements essentially required the plaintiffs to work full time delivering oil for Townsend and also contained noncompete clauses preventing the plaintiffs from delivering oil for other companies. The agreements were later amended when Barrasso and Crocker each incorporated their respective delivery businesses; the new agreements were between Townsend and the plaintiffs' separate corporate identities rather than the plaintiffs in their individual capacities.

In January, 2007, Townsend sought to terminate Barrasso's agreement, and the parties ultimately signed a contract carrier termination agreement that included reciprocal general releases of claims.[4] In April, 2007, Crocker signed a substantially identical termination agreement. The plaintiffs each received payments of several thousand dollars in exchange for signing the agreements. The plaintiffs both claim that at no point during negotiation or signing of the termination agreement were they aware that they might be considered employees entitled to Wage Act rights.[5]

---

[4]The general release in favor of the defendants provides:

> "[Each plaintiff] hereby forever releases, remises and discharges [Townsend] and its shareholders, directors, officers, employees and agents . . . of and from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands, obligations and liabilities whatsoever of every name and nature, both in law and equity . . . that [the plaintiffs] now have or ever had (or may in the future have, arising out of or in connection with any events occurring on or prior to the date hereof) against [Townsend] . . . . The foregoing release is intended to be a general release of all Claims, to the maximum extent permitted by law, whether or not the subject matter of any such Claim has been the subject of a previous claim or threatened claim made by [the plaintiffs]."

[5]Barrasso was represented by counsel during the negotiation of the contract carrier termination agreement.

The plaintiffs filed their complaint on December 18, 2009, on learning of a similarly situated delivery truck driver who had recovered against Townsend under the Wage Act. See Amero vs. Townsend Oil Co., Essex Superior Court, No. ESCV2007-01080 (Dec. 3, 2008). The plaintiffs' counsel moved to withdraw shortly thereafter. During this same period, Townsend filed a motion for summary judgment that was allowed (summary judgment judge). The plaintiffs subsequently retained new counsel and moved to vacate the entry of summary judgment. A second judge allowed the motion to vacate, concluding that the language of the Wage Act barring special contracts from exempting employers from its requirements invalidated the general releases as they related to the plaintiffs' Wage Act claims. Thereafter, the plaintiffs moved to amend the complaint to assert new claims against Townsend for violations of the Americans with Disabilities Act (42 U.S.C. §§ 12131 et seq. [2006]). Townsend opposed the motion and filed a second motion for summary judgment arguing that the lawsuit was time barred. The motions were heard by the summary judgment judge, who denied the plaintiffs' motion to amend based on futility, but allowed in part Townsend's motion for summary judgment on the ground that any claim relating to conduct that occurred more than three years prior to the filing of the suit was time barred.

2. *Discussion.* The respective decisions that (1) the statute of limitations bars the plaintiffs' recovery except insofar as it relates to compensation earned (including compensation for overtime hours worked) but not paid during the three years preceding the filing of suit and (2) the general release failed to release the plaintiff's Wage Act claims due to the broad scope of § 148 are legal conclusions that we review de novo. See *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003).

a. *Statute of limitations.* Assuming that the plaintiffs were at all times operating as Townsend's employees, a matter not contested for purposes of the present appeal, we turn to the first of the two reported issues. Specifically, we consider whether the motion judge correctly concluded that the statute of limitations bars the plaintiffs' Wage Act claims except as they relate to compensation earned but not paid during the three years preceding the filing of the suit.

To answer this question, we must address three subissues: (1) whether an employee is entitled to maintain an action for unpaid overtime under the Wage Act (governed by a three-year statute of limitations), rather than under the overtime provisions of G. L. c. 151, § 1A (governed by a two-year statute of limitations[6]); (2) whether the statute of limitations was tolled by operation of the discovery rule or fraudulent concealment; and (3) whether, where there are Wage Act violations within the statute of limitations period, the plaintiffs can recover for Wage Act violations occurring outside the limitations period on a theory of continuing violation. We consider each issue in turn.

General Laws c. 151, § 1A, sets forth the statutory requirements for overtime pay, including the right of an employee to receive compensation at a rate not less than one and one-half times his regular rate for work in excess of forty hours per work week.[7] General Laws c. 151, § 20A, provides that a cause of action for the nonpayment of overtime (as required by § 1A) must be brought within two years of the date it accrues. The summary judgment judge, however, concluded that the plaintiffs could nevertheless recover for unpaid wages and overtime under the Wage Act, which requires employers to make timely payment of wages to employees and has a three-year statute of limitations.[8] Thus, his decision suggests that the plaintiffs may recover unpaid overtime under either G. L. c. 151, § 1A, or the Wage Act.

Townsend argues that allowing the plaintiffs to assert claims for unpaid overtime under the Wage Act has the practical effect

---

[6]Townsend does not dispute the motion judge's ruling that the three-year statute of limitations set forth in G. L. c. 149, § 150 (Wage Act), controls the plaintiffs' nonovertime claims based on compensation earned but not paid.

[7]General Laws c. 151, § 1A, also enumerates certain kinds of employment that are exempt from the minimum overtime requirements. In particular, § 1A (8) exempts from coverage certain work performed for private motor carriers in interstate commerce subject to regulation by the Interstate Commerce Commission. Because the parties have not raised the exemption issue, we need not decide whether it is applicable to the present case.

[8]In pertinent part, the Wage Act provides that an employee claiming to be aggrieved by a violation of G. L. c. 149, §§ 33E, 148, 148A, 148B, 150C, 152, 152A, or 159C, or G. L. c. 151, § 19, "may . . . within 3 years after the violation, institute . . . a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits." G. L. c. 149, § 150.

of obviating the Legislature's determination that a shorter limitations period should apply for unpaid overtime claims under G. L. c. 151, § 1A. In support of this argument, Townsend cites *Mogilevsky* v. *Bally Total Fitness Corp.*, 263 F. Supp. 2d 164 (D. Mass. 2003), in which a Federal District Court judge concluded that a plaintiff (who brought his claim beyond the two-year statute) could recover for any unpaid overtime, but only at the standard rate, not the overtime rate, because to decide otherwise "would essentially eviscerate the distinction between the two-year statute of limitations for the failure to pay overtime hours at the overtime rate, [G. L.] c. 151, § 20A, and the three-year statute of limitations for the failure to pay wages altogether, [G. L.] c. 149, § 150." *Id.* at 169-170.

We agree with the reasoning in *Mogilevsky* v. *Bally Total Fitness Corp.*, *supra*, that an employee whose claim for unpaid overtime is barred by the two-year statute of limitations may nevertheless assert a claim for unpaid wages under the Wage Act. However, in such instance, recovery is limited to uncompensated time worked at the regular rate. That is, if the two-year statute of limitations has elapsed, the employee is not entitled to the premium overtime rate under G. L. c. 151, § 1A. This holding strikes a balance between the Legislature's intent behind the Wage Act that employees receive timely payment of wages, *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 147 (1959), and the Legislature's intent to draw a nominal distinction between overtime wages and regular wages by establishing different statute of limitations periods. *Mogilevsky* v. *Bally Total Fitness Corp.*, *supra*.

As it pertains to the present dispute, although the plaintiffs' overtime claims brought under G. L. c. 151, § 1A, are barred by the two-year statute of limitations, the plaintiffs may still recover for unpaid overtime work at the regular rate under the Wage Act, subject to the three-year statute of limitations. Next, we consider whether the three-year statute of limitations period was tolled either by the discovery rule or by reason of fraudulent concealment. We conclude that despite their characterization as independent contractors in the contractor carrier agreements that they (and their corporate entities) signed with Townsend, the plaintiffs were aware of all of the operative facts necessary to

support their later claim that they were in fact Townsend's employees. Similarly, because Townsend did not fraudulently conceal the plaintiffs' status as employees, the statute of limitations was not tolled.

Under the discovery rule, limitations periods in Massachusetts run from the time a plaintiff discovers, or reasonably should have discovered, the underlying harm (here, the plaintiffs' misclassification as independent contractors) for which relief is sought. *Passatempo* v. *McMenimen*, 461 Mass. 279, 293-294 (2012), quoting *Koe* v. *Mercer*, 450 Mass. 97, 101 (2007). Under the Wage Act, a person (like each of the plaintiffs) who performs services for another is presumed to be an employee unless:

> "(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and (2) the service is performed outside the usual course of the business of the employer; and, (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

G. L. c. 149, § 148B. Here, based on the express restrictions and requirements contained in the contract carrier agreements, the plaintiffs were possessed of all facts necessary to reach the conclusion that they might qualify as employees.[9] As such, the discovery rule did not operate to toll their Wage Act claims.

Alternatively, the plaintiffs argue that Townsend fraudulently concealed their status as employees in order to avoid paying them wages due to them under the Wage Act and that Townsend's alleged fraudulent concealment tolls the statute of limitations. We disagree.

"[W]hen a defendant fraudulently conceals a cause of action from the knowledge of a plaintiff, the statute of limitations is tolled under G. L. c. 260, § 12, for the period prior to the

---

[9]For example, under § 13 of the contract carrier agreements, the plaintiffs were not permitted to provide services to any other person or company without Townsend's approval, nor were the plaintiffs permitted to hire anyone without Townsend's consent. Such terms are indicative of a level of control that far exceeds that which a reasonable person would expect to accompany services rendered by an independent contractor.

plaintiffs' discovery of the cause of action."[10] *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 375 (2008), quoting *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 519 (1997) (*Demoulas*).[11] In such instances, the statute of limitations begins to run when the plaintiff has actual knowledge of the wrong giving rise to his cause of action. *Demoulas, supra.* Furthermore, "[a]bsent a fiduciary or other special duty . . . active fraud is ordinarily required to prove fraudulent concealment." *Salvas* v. *Wal-Mart Stores, Inc., supra* at 375-376.

There are no facts alleged to support the plaintiffs' contention that Townsend actively concealed or misrepresented any of the circumstances regarding the plaintiffs' employment. Townsend's attempt to exercise a higher level of control in some areas of the relationship (e.g., the delivery schedules), while eschewing similar control where it would be less financially expedient (e.g., the plaintiffs were required to provide and maintain a working delivery truck), is not itself evidence of misrepresentation or concealment.

Townsend's behavior in this regard is ambivalent at best. On the one hand, it might suggest that Townsend itself was unaware that plaintiffs might actually qualify as employees. On the other hand, assuming Townsend knew that the plaintiffs might misunderstand their employment status, Townsend in no way attempted to conceal from the plaintiffs the requisite information from which they might conclude they were in fact employees. The facts surrounding the nature of the employment relationship were known to all parties at all relevant times. See *Stetson* v. *French*, 321 Mass. 195, 198 (1947) ("cause of action is not

---

[10]General Laws c. 260, § 12, states: "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

[11]The plaintiffs also claim that Townsend owed them a fiduciary duty, such that the running of the applicable statute of limitations should have been tolled until they had actual knowledge of the fiduciary's implicit or explicit repudiation of its fiduciary obligations. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 518-519 (1997). The plaintiffs cite to no authority establishing a fiduciary relationship in the contractual circumstances before us, and in the absence of such authority, we decline to create fiduciary obligations in this context.

concealed from one who has knowledge of the facts that create it"). See also *Lynch* v. *Signal Fin. Co.*, 367 Mass. 503, 507-508 (1975); *Brackett* v. *Perry*, 201 Mass. 502, 505 (1909). Accordingly, the statute of limitations did not toll due to fraudulent concealment pursuant to G. L. c. 260, § 12. Contrast *Manufacturers' Nat'l Bank* v. *Perry*, 144 Mass. 313, 314 (1887) (defendant through his agent actively concealed bank's overpayment on check); *First Mass. Turnpike Corp.* v. *Field*, 3 Mass. 201, 207-208 (1807) (in contract to build road for plaintiffs, defendants concealed unsound foundation and poor quality of work and materials).

Our conclusion that the statute of limitations was not tolled brings us to the final subissue, whether the plaintiffs' damages are limited to those arising from Townsend's tortious failure to pay wages accruing within the three-year period immediately prior to the filing of the complaint. We conclude that they are so limited.

We begin with the following general proposition concerning damages occurring outside an applicable statute of limitations period:

> "The plaintiff who suffers damage down to the date of the commencement of the action may recover for all damage incurred within the applicable period of the statute of limitations, but if the [tort] has perdured for a period longer than the allowable period for bringing an action, the plaintiff is barred from recovering damages for the time antedating the allowable period, though his action is not barred. *The continuing nature of the wrong keeps alive the right to bring the action, but damages are recoverable only for that period within which the statute otherwise permits the commencement of an action*" (emphasis added).

J.R. Nolan & B. Henry, Civil Practice § 15.6, at 358 (3d ed. 2004), and cases cited.

By contrast, in certain discrimination cases arising under G. L. c. 151B, § 4, we have held that the continuing violation doctrine permits plaintiffs to recover for damages occurring outside the limitations period as long as "there is a discrete violation within the [statute of] limitations period to anchor the

earlier claims." *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001). "This exception recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact." *Id.* at 531. In such instances, unless a complainant reasonably should have been aware of the discriminatory employment actions, a complaint is considered to be timely filed even though "some, or a large portion, of the discriminatory conduct may have taken place more than six months prior to the complaint." *Id.* at 532.

However, in *Silvestris* v. *Tantasqua Regional Sch. Dist.*, 446 Mass. 756, 769 (2006), we specifically declined to extend the continuing violation doctrine to unequal wage claims arising under G. L. c. 149, § 105A. There, we recognized that, unlike other forms of discriminatory behavior (such as hostile work environment) where a chain of events must be viewed holistically to evaluate its discriminatory nature, "pay claims . . . give rise to a cause of action each time they occur and are easily identifiable." *Id.* at 769-770, quoting *Inglis* v. *Buena Vista Univ.*, 235 F. Supp. 2d 1009, 1028 (N.D. Iowa 2002). That is, "a claim of discriminatory pay . . . involves a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action." *Silvestris* v. *Tantasqua Regional Sch. Dist.*, supra at 769, quoting *Pollis* v. *New Sch. for Social Research*, 132 F.3d 115, 119 (2d Cir. 1997).

Our reasoning in the *Silvestris* case is conclusive on this point. In the same way that discriminatory pay claims are readily identifiable due to their autonomous nature, the plaintiffs in this case suffered discrete injuries each time Townsend failed to pay them the wages they were owed under the Wage Act. Moreover, given what we have said regarding the plaintiffs' access to all the material facts surrounding their employment status, the plaintiffs reasonably should have been aware that they were not receiving due compensation each time Townsend paid them. For these reasons, we conclude that the plaintiffs' recovery is limited to those damages that occurred within the three-year period prior to filing the complaint.[12] Because the plaintiffs filed this lawsuit on December 18, 2009, they may recover for injuries

---

[12]As we concluded in the context of an employer's failure to accommodate

occurring between December 18, 2006, and their respective termination dates.[13]

b. *Waiver of Wage Act claims.* We turn to the question whether the general releases contained in the contract carrier termination agreements bar the plaintiffs' Wage Act claims. Generally speaking, a "written contract, clear in its terms and freely entered into, is binding on both parties according to its terms." *Radovsky* v. *Wexler*, 273 Mass. 254, 257 (1930). For this reason, it has been our policy that a "general release of all demands embraces everything included within its terms." *Id.* See *Naukeag Inn, Inc.* v. *Rideout*, 351 Mass. 353, 356 (1966). "As is often the case, a release may be prompted by the settlement of a specific dispute or resolution of a specific issue, but broad wording in the release operates to settle all other, unrelated matters, even if they were not specifically in the parties' minds at the time the release was executed." *Eck* v. *Godbout*, 444 Mass. 724, 728 (2005). Based on this policy, Townsend argues that because the negotiations surrounding the contract carrier termination agreement were at arm's length[14] and the plaintiffs executed general releases, all of their claims, whether known or unknown, were settled, including their claims under the Wage Act.

By contrast, the language of the Wage Act can be viewed as standing in stark contrast to our policy concerning the broad enforceability of general releases. The Wage Act provides:

"Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned

---

an employee with impaired vision, the fact that the limitations period has run on earlier instances of discrimination does not make those events irrelevant. *Ocean Spray Cranberries, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 647 (2004). Instead, those events may be used as background evidence to support a plaintiff's claims for damages arising out of events that remain within the statute of limitations. *Id.* The same is true here: instances where an employee's claims for past wages are barred by the applicable statute of limitations can nevertheless be used as evidence to support any other claims that may arise as a result of the employer's nonpayment of wages.

[13]Barrasso last worked for Townsend on January 30, 2007. Crocker last worked for Townsend on April 15, 2007.

[14]Barrasso was represented by counsel during the negotiation of the contract carrier termination agreement. For this and other reasons, we also reject the plaintiffs' contention that the general release is void because it was signed under economic duress.

by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . . *No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty . . .*" (emphasis added).

G. L. c. 149, § 148. We have consistently held that the legislative purpose behind the Wage Act (and especially the "special contract" language) is to provide strong statutory protection for employees and their right to wages. See *Camara* v. *Attorney Gen.*, 458 Mass. 756, 760 (2011); *Electronic Data Sys. Corp.* v. *Attorney Gen.*, 454 Mass. 63, 70 (2009); *Wiedmann* v. *Bradford Group, Inc.*, 444 Mass. 698, 703 (2005); *Boston Police Patrolmen's Ass'n* v. *Boston*, 435 Mass. 718, 720 (2002); *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 145-147 (1959). To that end, we have held that the "special contract" provision "generally prohibit[s] an employer from deducting, or withholding payment of, any earned wages [and] cannot be overcome by an employee's assent, both because § 148 makes the 'special contract' prohibition unconditional and for reasons of public policy." *Camara* v. *Attorney Gen., supra.*[15]

In accord with this purpose, the plaintiffs opine that we should interpret the Wage Act according to its plain meaning, that is, "that the Legislature intended to bar any contract between an employer and employee that denied the employee the prompt payment of wages guaranteed by the Wage Act." Dobin *vs.* CIOview Corp., Middlesex Superior Court, No. MICV2001-00108 (Oct. 29, 2003).

---

[15]In *Camara* v. *Attorney Gen.*, 458 Mass. 756, 760-761 (2011), quoting Black's Law Dictionary 373 (9th ed. 2009), we noted that the term "special contract" is not defined in the Wage Act; thus, we elected to define it according to its dictionary definition as being a "peculiar provision[] . . . not ordinarily found in contracts relating to the same subject matter." We reject Townsend's argument that based on this definition the general releases at issue do not qualify as "special contracts" given that many employment and business termination agreements include reciprocal general releases and, therefore, such provisions cannot be said to be "peculiar." Our definition in the *Camara* case was limited exclusively to the term "special contract" and did not narrow the breadth of the clause, which also precludes anyone from exempting himself from the protections of the Wage Act "by any other means." G. L. c. 149, § 148.

If we were to agree with Townsend, we would be indorsing the view that the strong protections afforded by the Wage Act could be unknowingly frittered away under the cover of a general release in an employer-employee termination agreement. See *Electronic Data Sys. Corp.* v. *Attorney Gen., supra* (Wage Act would have little value if employers could exempt themselves simply by drafting contracts that placed compensation outside its bounds). On the other hand, if we subscribe to the plaintiffs' view, we would lose sight of the contravening public policy favoring the enforceability of general releases, and the risk that parties will be unable to settle employment claims by compromising or forgoing a Wage Act claim where that is the intention of all parties. See *Eck* v. *Godbout, supra* at 728-729.

We were confronted with a similar situation in *Warfield* v. *Beth Israel Deaconess Med. Ctr., Inc.*, 454 Mass. 390 (2009). In that case, we considered whether an arbitration clause contained in an employment contract should apply to gender discrimination claims arising under G. L. c. 151B, § 4 (1) and (4). *Id.* at 398. In our decision, we acknowledged that "considerations of public policy play an important role in the interpretation and enforcement of contracts," *id.* at 397, and we were required to balance the strong Federal and State policies favoring arbitration with the equally strong policy against various forms of workplace discrimination. *Id.* at 396-398. We concluded that "parties seeking to provide for arbitration of statutory discrimination claims must, at a minimum, state clearly and specifically that such claims are covered by the contract's arbitration clause." *Id.* at 400.

The approach we took in *Warfield, supra,* is instructive here. We similarly conclude that a settlement or contract termination agreement by an employee that includes a general release, purporting to release all possible existing claims, will be enforceable as to the statutorily provided rights and remedies conferred by the Wage Act only if such an agreement is stated in clear and unmistakable terms. In other words, the release must be plainly worded and understandable to the average individual, and it must specifically refer to the rights and claims under the Wage Act that the employee is waiving. Such express language will ensure that employees do not unwittingly waive their rights

under the Wage Act. At the same time, this course preserves our policy regarding the broad enforceability of releases by establishing a relatively narrow channel through which waiver of Wage Act claims can be accomplished.

Accordingly, the general releases contained in the contract carrier termination agreements that do not explicitly include the release of Wage Act claims failed to waive those claims. As a result, the plaintiffs remain entitled to recover for their damages accruing within the three-year period prior to filing the lawsuit in a manner consistent with this opinion.

*So ordered.*