CYRUS D. LIPSITT *vs.* JOSEPH J. PLAUD & another.[1]

Worcester. April 2, 2013. - August 12, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Wage Act. Common Law. Contract,* Employment, Performance and breach. *Damages,* Quantum meruit. *Practice, Civil,* Statute of limitations, Motion to dismiss, Motion to amend. *Limitations, Statute of. Attorney General. Corporation,* Corporate disregard.

This court concluded that G. L. c. 149, §§ 148 and 150, were not intended by the Legislature to be the exlusive remedy for the recovery of unpaid wages under Massachusetts law and, therefore, did not preempt common-law breach of contract and quasi-contract claims. [244-252]

In a civil action in which the plaintiff asserted common-law breach of contract and quasi-contract claims for unpaid wages against a defendant corporation and its president, the Superior Court judge erred in dismissing the claims against the individual defendant on the ground that the plaintiff failed to plead sufficient facts to pierce the corporate veil and hold the individual defendant personally liable for the corporation's liabilities, where the factual allegations in the complaint were sufficient to survive a motion to dismiss [252-254]; further, the judge erred in denying the motion to amend the complaint to plead such facts with more specificity [254-255].

CIVIL ACTION commenced in the Superior Court Department on September 20, 2010.

A motion to dismiss was heard by *Dennis J. Curran,* J., and a motion to amend the complaint was considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark I. Zarrow* for the plaintiff.

*Brandon H. Moss* for the defendants.

CORDY, J. In this case, we are asked to decide whether G. L. c. 149, §§ 148 and 150 (Wage Act), are intended to be the exclusive remedy for the recovery of unpaid wages under Massachusetts law, preempting common-law breach of contract and related quasi-contract claims. We conclude that they are not.

---

[1]Franklin D. Roosevelt American Heritage Center, Inc. (Heritage Center).

Cyrus D. Lipsitt filed suit against the defendants, the Franklin D. Roosevelt American Heritage Center, Inc. (Heritage Center), and its president, Joseph J. Plaud, for failing to pay approximately $117,500 in compensation he claimed was owed to him under an employment contract. The complaint asserted claims for breach of contract, quantum meruit, and violations of the Wage Act, among others. A judge in the Superior Court dismissed all but Lipsitt's claim under the Wage Act, reasoning that the Wage Act is the exclusive remedy for the recovery of unpaid wages, thereby preempting his common-law claims. Further, because Wage Act claims are subject to a three-year statute of limitations, G. L. c. 149, § 150, the judge ruled that Lipsitt's potential recovery would be limited to wages earned but unpaid during the three-year period preceding the filing of the suit. After voluntarily dismissing the remaining portion of his Wage Act claim with prejudice, Lipsitt appealed from the earlier dismissal, and we transferred his appeal to this court on our own motion. We reverse.[2]

1. *Background.* We review the allowance of a motion to dismiss de novo, accepting as true all factual allegations in the complaint and favorable inferences drawn therefrom. *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011), and cases cited. We may also consider exhibits attached to the complaint and items appearing in the record. *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 165-166 (2012), citing *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000).

Plaud founded the Heritage Center in 2004 for the purpose of establishing a museum to showcase his collection of memorabilia focused on President Franklin D. Roosevelt. Just prior to the Heritage Center's opening, Plaud offered Lipsitt the position of museum director, and the parties agreed that Lipsitt would be

[2]Cyrus D. Lipsitt also appeals from the judge's dismissal of Joseph J. Plaud as a defendant in his individual capacity, on the ground that the complaint failed to plead sufficient facts to state a claim for piercing the corporate veil, as well as the judge's denial of Lipsitt's motion to amend his complaint to correct any deficiencies in the pleading of this theory of liability. The Wage Act provides for individual liability for corporate officers, see G. L. c. 149, § 148; *Wiedmann* v. *The Bradford Group, Inc.*, 444 Mass. 698, 711 (2005), and therefore piercing the corporate veil is relevant only in relation to Lipsitt's claims against Plaud for breach of contract and quantum meruit. Because our decision reinstates those common-law claims, we reach this issue as well.

paid $2,000 per month for June and July, 2004, after which his salary would increase to $4,167 per month. Payments were to be made on the 15th and 30th of each month. The parties memorialized their agreement in October, 2004.[3]

The Heritage Center experienced financial difficulties from its inception. Lipsitt never received the full salary due to him under the contract, but continued to work for the Heritage Center based on Plaud's continuing representations to Lipsitt that the arrearages would be paid in full once debts owed to Plaud by third parties were paid. Most of the salary Lipsitt did in fact receive was paid from Plaud's personal checking account. Based on his desire to see the Heritage Center succeed and his belief that Plaud would honor his repeated promises to pay the back salary in full, Lipsitt continued to work for the Heritage Center through the summer of 2007.[4]

In July, 2007, the city of Worcester, which owned the building where the Heritage Center was located, decided not to renew its lease with the Center and the Center closed its doors. Initially, Plaud intended to reopen the Center at a new location in Chicopee in late 2007, and Lipsitt continued to work for the Center performing tasks relative to the intended relocation. Ultimately, Plaud abandoned the relocation plan, and the Center never reopened.

On September 17, 2008, Lipsitt filed a complaint with the Attorney General for nonpayment of wages pursuant to G. L. c. 149, § 150. On April 22, 2010, after an investigation, the Attorney General settled various Wage Act complaints with the Heritage Center and, on the same day, issued Lipsitt a right-to-sue letter. Lipsitt filed this action in Superior Court on September 20, 2010, seeking damages of approximately $117,500, a figure that apparently represents the roughly $127,000 he claims he is owed, minus the $9,000 in restitution he received from the Heritage Center pursuant to the terms of its settlement with the

---

[3]The complaint alleges that the parties entered into a written agreement in August, 2004, but a copy of the contract included in the record indicates it was executed on October 14, 2004.

[4]The exact date that Lipsitt terminated his employment with the Heritage Center is the subject of dispute, with the defendants contending it occurred on July 31, 2007, and Lipsitt contending it occurred sometime after that date.

Attorney General. The complaint asserted claims for breach of contract, quantum meruit, fraud and deceit, violations of the Wage Act, and violations of G. L. c. 93A, § 11.

The defendants moved to dismiss the complaint in its entirety pursuant to Mass R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), arguing that the Wage Act creates a comprehensive statutory remedy for the recovery of unpaid wages, thereby precluding Lipsitt's common-law claims for breach of contract, quantum meruit, and fraud and deceit. As to the Wage Act claim, the defendants argued it was time barred because more than three years had elapsed since the termination of Lipsitt's employment with the Heritage Center, which they contend occurred on July 31, 2007. Further, the defendants argued that G. L. c. 93A does not apply to employment relationships. Finally, Plaud argued that Lipsitt had failed to allege sufficient facts to pierce the corporate veil, which is a prerequisite to imposing individual liability on Plaud for the common-law claims. A judge in the Superior Court granted the motion to dismiss as to the common-law claims and the G. L. c. 93A claim, but not as to any portion of the Wage Act claim that alleged nonpayment of wages within the three-year period preceding the filing of the complaint.[5] Following the dismissal of the majority of his claims, Lipsitt moved to amend his complaint to plead sufficient facts to pierce the corporate veil and hold Plaud individually liable. The judge denied the motion principally on the basis that the amendment was futile where Lipsitt's common-law claims had already been dismissed as preempted. Subsequent depositions in the case cast doubt on the viability of Lipsitt's claim that he was employed by the Heritage Center (and thus owed salary) as of September 17, 2007 (three years prior to the commencement of the action), and Lipsitt moved to voluntarily dismiss the remaining Wage Act claim with prejudice so that he could appeal the dismissal of his common-law claims. Given the much longer six-year

[5]The defendants also moved to dismiss the entire complaint, arguing that the settlement with the Attorney General operated as an accord and satisfaction of all of Lipsitt's claims. The motion judge correctly rejected this argument, with the caveat that Lipsitt's eventual recovery would be reduced by the amount of restitution paid to him under the settlement agreement. Lipsitt was not a party to the Attorney General settlement, and the settlement agreement itself stated that the agreement "shall not bind any other private or governmental entity."

statute of limitations for contract claims, G. L. c. 260, § 2, and
the fact that the majority of Lipsitt's damages in the form of
unpaid salary accrued between six and three years prior to the
commencement of the Superior Court action, the survival of the
contract claim was vital to any meaningful recovery. Lipsitt ap-
peals from the dismissal of his contract and quantum meruit
claims, and from the dismissal of Plaud as a defendant in his
individual capacity.[6]

2. *Discussion.* a. *Dismissal of common-law claims.* The Wage
Act requires "[e]very person having employees in his service"
to pay "each such employee the wages earned" within a fixed
period after the end of each pay period. G. L. c. 149, § 148.
While acknowledging that there is "scant precedent" regarding
whether the Wage Act preempts common-law claims for the
recovery of unpaid wages, the motion judge nonetheless con-
cluded that "[i]n enacting the Wage Act, the legislature created
a comprehensive vehicle for recovering unpaid wages" and, ac-
cordingly, intended to preempt Lipsitt's common-law claims.
We disagree.

"It is well established that 'an existing common law remedy
is not to be taken away by statute unless by direct enactment or
necessary implication.' " *Eyssi* v. *Lawrence*, 416 Mass. 194,
199-200 (1993), quoting *Ferriter* v. *Daniel O'Connell's Sons*,
381 Mass. 507, 521 (1980).[7] Where the statute does not contain
any express language concerning the availability of common-
law remedies, we consider the possibility of implied preemp-
tion. *Elyssi* v. *Lawrence, supra.* This court has "long held that a

---

[6]Lipsitt does not appeal from the dismissal of his fraud and G. L. c. 93A
claims.

[7]Examples of express statutory preemption of the common law can be
found in the statute prohibiting unlawful discrimination, G. L. c. 151B, § 9,
which provides: "the administrative procedure provided in this chapter under
section 5 shall . . . exclude any other civil action based on the same griev-
ance"; the Massachusetts Tort Claims Act, G. L. c. 258, § 2, which states:
"The remedies provided by this chapter shall be exclusive of any other civil
action or proceeding by reason of the same subject matter"; and the workers'
compensation statute, G. L. c. 152, § 24, which states: "An employee shall be
held to have waived his right of action at common law or under the law of
any other jurisdiction in respect to an injury that is compensable under this
chapter, to recover damages for personal injuries, if he shall not have given
his employer, at the time of his contract of hire, written notice that he claimed
such right . . . ."

statutory repeal of the common law will not be lightly inferred; the Legislature's 'intent must be manifest.' " *Passatempo* v. *McMenimen*, 461 Mass. 279, 290 (2012), quoting *Comey* v. *Hill*, 387 Mass. 11, 20 (1982).

"The purpose of the Wage Act is 'to prevent the unreasonable detention of wages.' " *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 170 (2012), quoting *Boston Police Patrolmen's Ass'n* v. *Boston*, 435 Mass. 718, 720 (2002). See *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 147 (1959). The Wage Act "was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages." *Melia* v. *Zenhire, Inc.*, *supra*, quoting *Cumpata* v. *Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000). When the Wage Act was first enacted in 1886, its application "was initially limited to employees of a 'manufacturing, mining or quarrying, mercantile, railroad, street railway, telegraph, telephone and municipal corporation and every incorporated express company and water company.' " *Melia* v. *Zenhire, Inc.*, *supra* at 171 & n.6, quoting St. 1886 c. 87, § 1. Since that time, the "Legislature has broadened the scope of employees covered, the type of eligible compensation, and the remedies available to employees whose rights have been violated" (footnotes omitted).[8] *Melia* v. *Zenhire, Inc.*, *supra* at 171. The private right of action that is at issue here, however, did not exist until the Legislature amended

---

[8] "The Legislature expanded th[e] group of industries covered over the next fifty years, until it adopted the present language covering '[e]very person having employees in his service' . . . ." *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 171 n.6 (2012), quoting St. 1935, c. 350.

As to the types of eligible compensation, St. 1943, c. 467,

"extended the Wage Act to cover commissions that are 'definitely determined' and 'due and payable.' See generally *Okerman* v. *VA Software Corp.*, 69 Mass. App. Ct. 771, 775-780 (2007). Statute 1966, c. 319, expanded the definition of holiday and vacation pay. See generally *Electronic Data Sys. Corp.* v. *Attorney Gen.*, 454 Mass. 63, 66-71 (2009)."

*Melia* v. *Zenhire, Inc.*, *supra* at 171 n.7.

As to the remedies available, the Wage Act

"initially authorized levying a fine of between ten and fifty dollars. St.

the Wage Act in 1993. Statute 1993, c. 110, § 182, codified at
G. L. c. 149, § 150, "dramatically increased" the remedies
available to employees, by authorizing a private right of action,
including provisions for treble damages and attorney's fees and
costs. *Melia* v. *Zenhire, Inc., supra* at 171 n.8. The Legislature
later made treble damages mandatory by St. 2008, c. 80, § 5,
superseding our decision in *Wiedmann* v. *The Bradford Group,
Inc.*, 444 Mass. 698, 709 (2005).[9]

Thus, despite the arguably "comprehensive" nature of the
Wage Act in its current form, the earliest the Legislature col-
lectively could have formed or manifested an intent to preempt
common-law remedies was on the creation of the private right
of action by the 1993 amendments. Unfortunately, the legisla-
tive record of the 1993 amendments sheds little light on the
question. Instead, it demonstrates that the driving force behind
the 1993 amendments was a desire to transfer enforcement of
the Wage Act from the Department of Labor and Industries
(department) to the Attorney General, amid criticism that the
department was not aggressively enforcing the Wage Act for
political reasons.[10] See St. 1993, c. 110, § 269 (transferring

1886, c. 87, § 2. In St. 1929, c. 117, the Legislature added the alterna-
tive of imprisonment in a house of correction for up to two months.
The Legislature gradually increased the limits of the fine in St. 1971,
c. 590 (twenty to one hundred dollars); St. 1977, c. 664 (one hundred
dollars to $500); and St. 1987, c. 559, § 29 ($500 to $3,000)."

*Melia* v. *Zenhire, Inc., supra* at 171 n.8. Statute 1998, c. 236, § 7, codified at
G. L. c. 149, § 27C, "authorized punishment of up to $25,000 or imprison-
ment for one year for wilful violations, and $10,000 or six months imprison-
ment for nonwilful violations, with both penalties subject to enhancement for
subsequent offenses." *Melia* v. *Zenhire, Inc., supra.*

[9]The current version of G. L. c. 149, § 150, reads, in pertinent part:

"An employee claiming to be aggrieved by a violation of [the Wage
Act] may, 90 days after the filing of a complaint with the attorney
general, or sooner if the attorney general assents in writing, and within
3 years after the violation, institute and prosecute in his own name and
on his own behalf, or for himself and for others similarly situated, a
civil action for injunctive relief, for any damages incurred, and for any
lost wages and other benefits. An employee so aggrieved who prevails
in such an action shall be awarded treble damages, as liquidated dam-
ages, for any lost wages and other benefits and shall also be awarded
the costs of the litigation and reasonable attorneys' fees."

[10]The amendment was passed over then Governor William Weld's veto.

enforcement of Wage Act to office of Attorney General). It is inferable that the Legislature contemporaneously created the private right of action as a means further to ensure rigorous enforcement of the Wage Act, but this underlying purpose does not by itself suggest an intent to abrogate the common law.

Essentially, where there is no indication of legislative intent to preempt the common law, the question is one of practicality. We must decide whether the common-law remedy is preempted by "necessary implication." *Eyssi* v. *Lawrence*, 416 Mass. 194, 199-200 (1993), quoting *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 521 (1980). Virtually all the cases on which the defendants (and the judge below) rely are distinguishable because they find an implied preclusion of common-law actions where "the legislature creates a new right or duty that 'is wholly the creature of statute [and] does not exist at common law.' " Mansfield *vs.* Pitney Bowes, Inc., U.S. Dist. Ct., No. 12-1031-DJC, slip op. at 6 (D. Mass. Mar. 12, 2013) (Mansfield), quoting *School Comm. of Boston* v. *Reilly*, 362 Mass. 334, 338 (1972).[11] In contrast, the right of an employee to sue for breach of contract

[11]As the court in Mansfield *vs.* Pitney Bowes, Inc., U.S. Dist. Ct., No. 12-10131-DJC, slip op. at 6 (D. Mass. Mar. 12, 2013) (Mansfield), reasoned, and we agree, "[c]ases involving the Tips Act [G. L. c. 149, § 152A], the Wrongful Termination statute [G. L. c. 149, § 148A] and the Prevailing Wage statute [G. L. c.149, §§ 26-27] are situations where an employee would have no recognized cause of action but for the statutes' imposition of obligations on employers." General Laws c. 149, § 152A, requires that service charges collected from customers only be remitted to certain categories of employees. Because the "right to have service charges imposed by [a service employer] distributed only to certain categories of employees is created by [G. L. c. 149, § 152A,] and did not exist at common law," common-law claims predicated on a violation of G. L. c. 149, § 152A, are "mere surplusage because they needlessly duplicate the remedies available under the statute." Mansfield, *supra*, quoting Depina *vs.* Marriot Int'l, Inc., Suffolk Super. Ct., No. 03-05434-G, slip op. at 19 (July 28, 2009). Likewise, G. L. c. 149, § 148A, makes it unlawful for an employer to terminate an at-will employee for exercising his or her rights against that employer under the wage and hour laws, creating a cause of action not recognized at common law prior to the statute's enactment. See *Mello* v. *Stop & Shop Cos.*, 402 Mass. 555, 557 & n.2 (1988) (citing G. L. c. 149, § 148A, as example of statute not giving rise to common-law cause of action based on statutorily created right "because the Legislature has also prescribed a statutory remedy"); Dobin *vs.* CIOview Corp., Middlesex Super. Ct., No. 2001-00108, slip op. at 14-15 (Oct. 29, 2003) ("when the Legislature has provided a statutory cause of action to an at-will employee who has been discharged for exercising her statutory rights, there is no need

or on a quasi-contract theory arising from the nonpayment of wages is so long standing and fundamental that it requires no citation. Lipsitt's claims for breach of contract, or, in the alternative, quantum meruit, do not depend on proving a violation of some statutorily created right. His claims for unpaid wages due him under an employment agreement were cognizable well prior to the creation of the Wage Act's private right of action in the 1993 amendments. Indeed, for much of the Wage Act's existence before then, an employee's principal recourse for the nonpayment of wages would have been to file a contract or quasi-contract action. As previously stated, "statutory repeal of the common law will not be lightly inferred; the Legislature's 'intent must be manifest.' " *Passatempo* v. *McMenimen*, 461 Mass. 279, 290 (2012). Had the Legislature intended the Wage Act — which was designed to *enhance* the rights of employees with respect to the payment of wages, see *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 171 & n.8 (2012) — to abrogate these

to *add* a common-law remedy" [emphasis added]). Finally, G. L. c. 149, §§ 26 to 77, "create[] a mandatory wage term, imposed on employers by law [that] 'did not exist at common law.' " *George* v. *National Water Main Cleaning Co.*, 286 F.R.D. 168, 188 (D. Mass. 2012), quoting *School Comm. of Boston.* v. *Reilly*, 362 Mass. 334, 338 (1972).

Although we are not confronted with and do not decide the scope of the above cited statutes' implied preclusion of common-law claims, we agree with the general proposition advanced by the defendants that a plaintiff should not be allowed to circumvent procedural or other requirements imposed by a particular statute by pleading a common-law cause of action that asserts a right created under that statute and not previously recognized at common law. Compare *School Comm. of Boston* v. *Reilly*, *supra* at 338-339 (statute imposing fine as sole remedy available against workers engaged in unlawful strike held not to preempt employer's petition for injunctive relief where "the duty sought to be enforced is contractual in nature and is not wholly the creature of statute. . . . There is nothing in the enactment of [the statute that] would warrant the conclusion that this enactment was intended to restrict previously existing common law remedies for breach of contract in the employer-employee context"), with *School Comm. of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, 357 (1928) ("The duty [of municipalities to raise taxes for the benefit of the public schools] which the petitioners seek to have enforced is 'wholly the creature of statute.' It does not exist at common law. The same statute, which creates the duty, provides the remedy for breach of that duty"). Cf. *Anderson* v. *Sara Lee Corp.*, 508 F.3d 181, 192-195 (4th Cir. 2007), and cases cited (employees' State law claims for breach of contract, negligence, and fraud preempted by Federal Fair Labor Standards Act [FLSA] enforcement scheme where those State claims "all depend[ed] on establishing that [the employer] violated the FLSA").

long-standing common-law causes of action, "we think it would have done so explicitly." *Eyssi* v. *Lawrence*, 416 Mass. 194, 200 (1993).

In *Passatempo* v. *McMenimen, supra,* we considered whether a provision of G. L. c. 175, § 181, which grants to buyers of insurance the right of rescission against insurance companies whose officers or agents induced the sale of insurance by fraud, was intended to exclude other "long-standing" common-law remedies against insurance companies and their agents for fraud or misrepresentation. As to the right to bring suit against an agent individually, we reasoned:

> "Given the Legislature's expansion of the types of mis-representation for which agents and employees could be criminally sanctioned, the heightened criminal sanctions it imposed on them, and its approval of expanded civil liability against the companies for which they sold insurance, it seems most unlikely that the Legislature intended to change course by insulating agents from this long-established right of action."

*Passatempo* v. *McMenimen, supra* at 289. As to the ability of an insured to seek remedies other than rescission against the companies themselves, we stated: "[T]he Legislature's desire to enhance deterrence makes it doubtful that the Legislature would have intended to preempt civil remedies other than rescission against insurance companies." *Id.* Analogous in purpose to G. L. c. 175, § 181, the Wage Act is clearly intended to deter the nonpayment of wages through the imposition of enhanced penalties and remedies not available at common law. See *Melia* v. *Zenhire, Inc., supra.* Where, as is the case with the Wage Act, a statute is designed to *enhance* certain rights, we will not read it to abrogate common-law actions aimed at perfecting those same rights unless the statute requires such a reading by express language or necessary implication. *Eyssi* v. *Lawrence, supra.*

The minimal practical impact that the continued existence of a common-law right to recover unpaid wages will have on the enforcement scheme established by the Wage Act further supports our conclusion that the Wage Act does not preempt the common law by necessary implication. On this point, the defendants argue that the continued existence of a common-law cause

of action for unpaid wages will frustrate the purposes of the
Wage Act's requirement that an employee report a Wage Act
claim to the Attorney General's office before proceeding in
court. We disagree. First, we note that the reporting requirement
in G. L. c. 149, § 150, "is intended simply to ensure that the
Attorney General receives notice of the alleged violations, so
that she may investigate and prosecute such violations at her
discretion." *Depianti* v. *Jan-Pro Franchising Int'l, Inc.*, 465
Mass. 607, 612 (2013), citing *Nahigian* v. *Leonard*, 233 F.
Supp. 2d 151, 164 (D. Mass. 2002). "[U]nlike the filing require-
ment in [the Massachusetts antidiscrimination statute, G. L.
c. 151B], the filing requirement in § 150 triggers no mandatory
agency investigation or administrative adjudicatory action" and
therefore does not operate "as the necessary first step in a
comprehensive remedial scheme. . . ." *Depianti* v. *Jan-Pro
Franchising Int'l, Inc.*, *supra* at 613-614. See G. L. c. 151B,
§ 5 (filing of complaint with Massachusetts Commission Against
Discrimination [MCAD] triggers mandatory "prompt investiga-
tion" by that agency, after which, if allegations prove credible,
MCAD shall "immediately endeavor to eliminate the unlawful
practice complained of . . . by conference, conciliation and
persuasion"). Although we will not speculate on every single
reason an employee might chose to pursue a common-law
contract or quasi-contract claim *in lieu of* a Wage Act claim, we
suspect this will largely occur only in cases such as this one,
where an employee's Wage Act claims are time barred.[12] This is
true for the simple reason that it would be foolhardy for an
employee to forgo the mandatory award of treble damages and
attorney's fees provided by the Wage Act in the event the
employee prevails on such a claim. Some plaintiffs may choose
to plead common-law claims in addition to or in the alternative
to Wage Act claims, if, for instance, there is some dispute over
the applicability of the Wage Act that cannot be resolved at the
pleadings stage. See Mansfield, *supra* at 8 n.5.[13] Moreover, for
cases where an employee's Wage Act claims *are* time barred,

---

[12]We note that even in this case, where the Wage Act claims ultimately
proved to be time barred, Lipsitt still filed a complaint with the Attorney
General's office.

[13]However, where a complaint is filed within the three-year period for
bringing claims under the Wage Act and the Wage Act plainly applies to all

the employee would have little reason to report the claim to the Attorney General's office in the first place, as he or she would be unable to bring the claim in court. We therefore doubt that our holding today will have any appreciable effect on the reporting of Wage Act claims or the enforcement scheme generally.

The fact that, in cases like the present one, an employer whose Wage Act liability for treble damages and attorney's fees has been extinguished will nonetheless be exposed to simple contract liability for an additional three-year period is consistent with both the public policy objectives underlying the Wage Act and the status of an employment agreement as a contract like any other. In *Crocker* v. *Townsend Oil Co.*, 464 Mass. 1, 6-7 (2012), we held that an employee whose claim for unpaid overtime pursuant to G. L. c. 151, § 1A, was time barred under that statute's two-year statute of limitations could nonetheless assert a claim for unpaid wages under the Wage Act, with his recovery limited to uncompensated time worked at the regular rate instead of the premium statutory overtime rate. In so holding, we "[struck] a balance between the Legislature's intent behind the Wage Act that employees receive timely payment of wages, . . . and the Legislature's intent to draw a nominal distinction between overtime wages and regular wages by establishing different statute of limitations periods" (citation omitted). *Crocker* v. *Townsend Oil Co.*, *supra* at 7, citing *Mogilevsky* v. *Bally Total Fitness Corp.*, 263 F. Supp. 2d 164, 169-170 (D. Mass. 2003). With the Wage Act, the Legislature has subjected employers to enhanced penalties for the unreasonable detention or nonpayment of wages, including mandatory treble damages and attorney's fees, while at the same time establishing a relatively short, three-year statute of limitations. It does not upset this balance to continue to subject employers to normal contract liability for the full six-year statute of limitations period applicable to contracts generally. See Mansfield, *supra* at 8 ("the statute can also be seen to simply create an alternate

the damages sought, it would make little sense for a plaintiff to add a common-law claim against a corporate officer where the key issue will be whether that corporate officer is individually liable under a veil-piercing theory. This is so because individual liability of corporate officers is clear under the Wage Act, see G. L. c. 149, § 148, but would require considerable discovery and difficult fact finding by the court as to common-law claims, all for no practical purpose.

remedial option: the statute creates a right to treble damages, attorney's fees and costs that does not exist in the common law and balances this right with a shortened recovery period"). Particularly where an employee's Wage Act claims are time barred, we see no good reason why, given the strong presumption against implied abrogation of the common law, that employee cannot seek to recover those unpaid wages by bringing a contract or quasi-contract claim. See *Passatempo* v. *McMenimen*, 461 Mass. 279, 297 (2012) ("Contrary to [the defendant's] assertions, the mere fact that the G. L. c. 93A violations alleged would also support a common-law tort claim does not make them subject to the shorter, three-year statute of limitations."); *Rita* v. *Carella*, 394 Mass. 822, 822-823 (1985) (tenants who brought action alleging landlord charged rent in excess of maximum lawful rent entitled to pursue G. L. c. 93A claim, which carried four-year statute of limitations, where one-year statute of limitations applicable to rent control ordinance had expired).

b. *Dismissal of Plaud as a defendant.* Lipsitt also challenges the dismissal of Plaud as a defendant on the ground that Lipsitt failed to plead sufficient facts to pierce the Heritage Center's corporate veil and hold Plaud personally liable for the Center's liabilities. A complaint "does not need detailed factual allegations" to survive a motion to dismiss for failure to state a claim, but "requires more than labels and conclusions" and must contain " 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 557 (2007). Here, the judge reasoned:

> "Lipsitt has alleged only that 'Plaud failed to observe the corporate formalities, paid Lipsitt from his personal checking account and otherwise co-mingled his personal business with that of the [Heritage Center].' . . . This allegation is insufficient under [*Iannacchino* v. *Ford Motor Co.*]'s plausibility standard to establish Plaud's individual liability under [*Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728 (1991)]. Therefore, Plaud must be dismissed as a defendant."

*Evans* v. *Multicon Constr. Corp.*, *supra* at 733, sets forth

"twelve factors which should be considered in deciding whether to penetrate the corporate form." These factors originated in *Pepsi-Cola Metro. Bottling Co.* v. *Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985), and we recognized them in *Attorney Gen.* v. *M.C.K., Inc.*, 432 Mass. 546, 555 & n.19 (2000). They are as follows: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." *Id.* at 555 n.19, citing *Pepsi-Cola Metro Bottling Co.* v. *Checkers, Inc.*, *supra*, and *Evans* v. *Multicon Constr. Corp.*, *supra*. See *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 617-621 (1968). All factors should be considered, "but the exercise is, of course, not one in counting." *Evans* v. *Multicon Constr. Corp.*, *supra* at 736.

Although the doctrine of corporate disregard is an equitable tool that is only to be employed by courts "in rare situations, to ignore corporate formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice," *Attorney Gen.* v. *M.C.K., Inc.*, *supra* at 555, we are concerned today only with whether Lipsitt's complaint contained sufficient factual allegations to survive a motion to dismiss this claim,[14] not whether the facts once fully developed will ultimately justify piercing the corporate veil and holding Plaud personally liable. The factual allegations in the original complaint, which included that Plaud intended to pay Lipsitt's back salary once debts owed to Plaud were paid,[15] that the Heritage Center had not filed any corporate tax returns, and that any salary Lipsitt

---

[14]Although an academic point, we note that "the doctrine of corporate disregard is not a cause of action but an equitable doctrine by which an act or obligation of a corporation giving rise to a cause of action may be charged to a principal of the corporation. . . ." *Kraft Power Corp.* v. *Merrill*, 464 Mass. 145, 146 (2013).

[15]The debts were impliedly owed to Plaud personally or in conjunction with another business venture, and had nothing to do with the Heritage Center.

did in fact receive was paid from Plaud's personal checking account and without any withholdings, were sufficient under the *Iannacchino* v. *Ford Motor Co.* plausibility standard to survive a motion to dismiss. *Id.* at 636. The factual allegations contained in the original complaint, although not as detailed as they might have been, touched on at least half of the factors set forth in *Evans* v. *Multicon Constr. Corp.*, *supra*, and "plausibly suggest" an entitlement to relief. Accordingly, Plaud should not have been dismissed as a defendant.

c. *Denial of motion to amend.* Alternatively, Lipsitt's motion to amend his complaint to plead his veil piercing claim with more specificity should have been allowed. "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served and prior to entry of an order of dismissal. . . . Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974). "Although leave to amend is within the discretion of the judge, leave should be granted unless there appears some good reason for denying the motion." *Goulet* v. *Whitin Mach. Works, Inc.*, 399 Mass. 547, 549 (1987), citing *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289 (1977). "Such reasons include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [,] futility of amendment, etc.' " *Goulet* v. *Whitin Mach. Works, Inc.*, *supra* at 549-550, quoting *Castellucci* v. *United States Fid. & Guar. Co.*, *supra* at 290.

The judge denied the motion to amend "for the reasons set forth in [Plaud's] memorandum in opposition at pages 3-9 inclusive." That section of Plaud's opposition argued that the proposed amendment was futile where Lipsitt's underlying common-law claims had already been dismissed as statutorily preempted, and where Lipsitt's proposed amended complaint did not, in Plaud's view, cure the deficiencies of the original complaint.[16] The first part of Plaud's futility argument is rendered moot by our decision today reinstating Lipsitt's common-law

---

[16]Plaud's opposition also argued that Lipsitt should not have been allowed

claims for breach of contract and quantum meruit. Further, because the factual allegations in Lipsitt's original complaint were sufficient to state a claim for corporate disregard, it follows that a fortiori, Lipsitt's amended complaint, which expands on and supplements those factual allegations, is also sufficient.

3. *Conclusion.* Because the Legislature did not intend the Wage Act to be the exclusive remedy for the recovery of unpaid wages, Lipsitt's common-law claims for breach of contract and quantum meruit should not have been dismissed. Further, because Lipsitt pleaded sufficient facts to state a claim against Plaud on a theory of piercing the corporate veil — or, in the alternative, should have been allowed to amend his complaint in that regard — Plaud should not have been dismissed as a defendant. The judgment of dismissal is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

to amend his complaint to specifically allege Plaud's liability as a statutory employer under G. L. c. 149, § 148, on the grounds of undue delay. As Lipsitt's surviving Wage Act claim was voluntarily dismissed with prejudice, we need not address this argument.