Wilson, Paul D., J.
Plaintiff David Lavitman (“Lav-itman”) brought this lawsuit to recover damages suffered by himself and a purported similarly situated class for alleged violations of the Massachusetts Wage Act, Mass. G.L.c. 149, §152A. The defendants, Uber Technologies, Inc. (“Uber”), its President Travis Kalanick, and its Vice President Ryan Graves (collec *477 tively, “Defendants”), have developed and rolled out a dispatch application (the “Uber App”) that allows taxi drivers such as Lavitman to locate and pick up riders and to receive payment from them via smartphone. The complaint alleges that the Defendants improperly retained a portion of the 20% fee the Uber App charges each rider in addition to that rider’s fare.
The case is now before me on the Defendants’ Motions to Dismiss and for Partial Summaiy Judgment. After two hearings, and a careful review of the parties’ many submissions, I will deny the Defendants’ motions for the reasons that follow.
PROCEDURAL HISTORY
Lavitman originally filed this case in Suffolk County Superior Court in December 2012. In January 2013, the Defendants filed a Notice of Removal to the United States District Court for the District of Massachusetts, pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d) and 1441(b). In August 2013, the District Court remanded the case to this court.
While the case was pending in federal court, Uber moved to dismiss it on several grounds. That motion to dismiss was pending when the case was returned to Superior Court.
On March 10, 2014, I heard argument on the motion to dismiss. I then reviewed the extensive materials submitted by the parties. One of Uber’s theories was that Lavitman was bound by a forum selection clause to bring suit in California, not Massachusetts. As to that theory, Uber and Lavitman had put before me factual materials which I could not consider when deciding a motion to dismiss. I agreed with Uber, however, that it made sense to decide this forum selection clause argument at the outset, so that the remaining issues could be decided in the correct forum.
For that reason, by order dated June 6, 2014, I converted the' forum selection clause issue raised by the motion to dismiss into a summaiy judgment motion. As required by Mass.R.Civ.P. 56, I allowed all parties to file all additional factual material they deemed relevant to the forum selection clause, and I allowed further briefing as well. I specifically asked the parties to brief the issue of the enforceability of the forum selection clause in light of Ajemian v. Yahoo!, Inc., 83 Mass.App.Ct. 565 (2013), a recent Appeals Court decision that was the only Massachusetts authority on the enforceability of contracts entered into by clicking “I Agree” on an electronic screen, which was the process by which, according to Uber, Lavitman had agreed to the forum selection clause.
On September 19,2014, the parties filed the motion for partial summary judgment that I requested, as well as a sizable package of factual materials and various briefs in support of and in opposition to that partial summaiy judgment motion. Further briefing followed in October 2014. On December 18, 2014, I heard argument for the second time, this time limited to the enforceability of the forum selection clause.
FACTS
A review of the facts not in dispute shows that in October 2012, Lavitman signed up to use the Uber App as a driver. Lavitman signed a written, paper two-page “Partnership Agreement” that, among other things, listed his contact information, hackney number, and medallion number.
In addition to signing the Partnership Agreement, Uber alleges that Lavitman had to register as a driver using Uber’s online sign-up page. As part of the online registration process, each prospective driver must click an “I Agree” button, indicating agreement to the “Uber Partner Terms and Conditions” (the ‘Terms and Conditions”). The Terms and Conditions include a forum-selection clause providing, in pertinent part, that “any disputes, actions, claims, or causes of action arising out of or in connection with this Agreement or the [Uber] Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California,” where Uber has its national headquarters. Lavitman, however, alleges that he only gave his registration information to his son, Gaiy Lavitman (“Gary”). Gaiy then took down the information, scanned it, and electronically sent the scan to Uber. An Uber employee then completed Lavitman’s online registration process for him. Lavitman further alleges that, at the time, Gaiy was recruiting taxi drivers on Uber’s behalf.
Lavitman then began using the Uber App to find riders. After he did so — indeed, after Lavitman filed this suit in Superior Court in December 2012 — Uber updated the Terms and Conditions at least three times.
Uber distributes such updates in the form of a notification that appears when a driver, here Lavit-man, attempts to access the Uber App to find potential passengers. The driver is required to view a screen containing three hyperlinked contracts, including the updated Terms and Conditions, and to click two “Yes, I Agree” buttons acknowledging that the driver has read and agrees to the updated Terms and Conditions. A driver cannot access the Uber App, and therefore cannot locate potential riders, without going through this process.
It is undisputed that these three versions of updated Terms and Conditions all contained the same forum-selection clause quoted above, and that Lavitman clicked ‘Yes, I Agree” when he accessed the Uber App on August 5, 2013, December 10, 2013, and July 24, 2014.
DISCUSSION
1. Summaiy Judgment Motion Concerning Forum Selection Clause
“Summaiy judgment is appropriate where the pleadings, depositions, answers to interrogatories, *478 and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). A court considering a motion for summary judgment must view the facts, and the inferences that can reasonably be drawn from them, in the light most favorable to the nonmoving party. Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983). Material facts are those “facts that, if true, [would] provide a basis for a reasonable jury to find for a party.” Carey v. New Eng. Organ Bank, 446 Mass. 270, 278 (2006).
I. The Original Online Registration
As a general matter, “[a] plaintiffs choice of forum should rarely be disturbed.” New Amsterdam Casualty Co. v. Estes, 353 Mass. 90, 95 (1967) (citationomitted). However, a party to a contract may exercise this forum-selection privilege in advance by agreeing to a forum-selection clause. See Atl. Marine Constr. Co. v. United States Dist. Ct., 134 S.Ct. 568, 582-83 (2013) (holding that agreement to forum-selection clause constitutes exercise of “plaintiffs venue privilege,” such that plaintiffs later choice to bring suit in a different forum “merits no weight” and is not entitled to deference).
It is a basic principle of contract law that an enforceable contract requires a “meeting of the minds,” consisting of “agreement between the parties on the material terms of that contract, and ... a present intention to be bound by that agreement.” Situation Mgmt. Sys. v. Malouf, 430 Mass. 875, 878 (2000). The Appeals Court has held that a party seeking to enforce a forum-selection clause in an online contract (here, Uber), which the other party allegedly entered into by clicking something on an electronic screen (here, Lav-itman), “has the burden of establishing, on undisputed facts, that the provisions of the [contract] were reasonably communicated and accepted” by the parly to be bound (here, Lavitman again). Ajemian v. Yahoo!, Inc., 83 Mass.App.Ct. 565, 576 (2013). In particular, the enforcing party must show an “unambiguous manifestation of assent.” Id.
In this case, Lavitman has presented facts from which a reasonable finder of fact could conclude that Lavitman never saw the Terms and Conditions at the outset of the Uber-Lavitman relationship. Such a finding would preclude the “unambiguous manifestation of assent” that is required for the electronically communicated forum-selection clause to be enforceable, because, on this view of the facts, Uber failed to communicate that clause to Lavitman.
The Defendants respond that, because Gary transmitted Lavitman’s registration information to Uber, Uber was Gary’s sub-agent for the registration, and was empowered to bind Lavitman to the forum-selection clause. This argument is unavailing, for several reasons.
The first problem concerns an open issue of fact. When Gary took down Lavitman’s information and transmitted it to Uber, it is unclear whether Gary was acting as Lavitman’s agent (because he was signing up his father Lavitman as an Uber driver) or as Uber's agent (because he was recruiting drivers for Uber).'
The second problem is a failure of factual proof. Even if Gary was acting as Lavitman’s agent, Lavitman has presented evidence that Gary, just like Lavitman himself, did not click “Yes, I Agree” in the sign-up process, and that an Uber employee handled this part of the registration. Specifically, Gary states in his affidavit that he only scanned his handwritten version of Lavitman’s information and sent it to Uber, and did not complete any online registration.
The third problem is legal rather than factual. Uber is correct that a sub-agent may bind a principal to an agreement with a third party. Rayden Engineering Corp. v. Church, 337 Mass. 652, 661-62 (1958) (act of sub-agent may bind principal). So, in this case, if Gary was Lavitman’s agent, and Uber was Gary’s sub-agent, Uber could have bound Lavitman to an agreement with a third parly. But that is not what Uber is arguing; Uber suggests that, acting as a sub-agent for Lavit-man, Uber bound Lavitman to a contract with Uber itself, not with a third party. But Uber cannot bind Lavitman to an agreement with itself, because there' can be no “meeting of the minds” where only one “mind” is involved in the transaction.
At the December 2014 oral argument, counsel for Uber conceded that there is a genuine issue of material fact as to whether Lavitman assented to the Terms and Conditions at the time he signed up to use the Uber App as a driver.[3] He was right, and so Uber is not entitled to partial summaiy judgment based on the original online registration.
II. Lavitman’s “Assent” to the Updated Terms and Conditions
The Defendants argue that even if Lavitman did not agree to ‘the Terms and Conditions at the time he originally registered with Uber, he agreed to the forum selection clause on each of the three occasions when he later (it is undisputed) clicked on the “Yes, I Agree” buttons when presented with Terms and Conditions containing the forum selection clause. Lavitman had already filed this suit by then, but Uber argues that I should give retroactive effect to his post-lawsuit “agreements,” in August 2013, December 2013, and July 2014, to sue Uber only in California.
However, such a retroactive application would nullify altogether Lavitman’s right, as plaintiff, to choose the forum in which to press his claims. Here, Lavitman is not attempting to take a second bite of the apple by disregarding a pre-existing forum-selection clause. To the contrary, he exercised his “venue privilege" when he brought this suit in October 2012. Uber then asked him to undo that choice later, when it told him that he could not continue to use the Uber App unless he now *479 agreed, for the first time, to updated Terms and Conditions containing a forum selection clause that would, if enforced, prevent him from continuing to prosecute his already-filed lawsuit in Massachusetts.
The Defendants rely on two federal cases in which courts have upheld post-filing forum-selection clauses: Newhall v. Chase Home Fin., LLC, 2010 U.S.Dist. LEXIS 115690 (D.N.J., Oct. 2010), and Baqui v. Burlington Ins. Co., 2011 U.S.Dist. LEXIS 35897 (D.Haw., Mar. 2011). However, those cases are factually distinct from this case. In the former, the court found that transferring the case was “clearly warranted . . . independent of the [forum-selection] Agreement.” Newhall at *17. In the latter, the forum-selection clause was part of a stipulation negotiated by the parties while the suit was ongoing that was approved by the court.
Here, in contrast to Newhall, there is no independent reason to transfer this case to California. Also, in contrast to Baqui, the updated Terms and Conditions were manifestly not the product of further negotiation between Lavitman and Uber. Therefore, bearing in mind that Massachusetts recognizes strong protections for claims brought under the Wage Act, Crocker v. Townsend, 464 Mass. 1, 14 (2012) (rejecting “the view that the strong protections afforded by the Wage Act could be unknowingly frittered away under the cover of a general release in an employer-employee termination agreement”), I find that the post-filing forum-selection clause in this case is not enforceable and the Defendants are not entitled to summary judgment on that basis.
2. The Motion to Dismiss
In addition to the Defendants’ Motion for Partial Summary Judgment, I also have before me the Defendants’ initial Motion to Dismiss. For the reasons previously discussed, the Defendants are not entitled to dismissal based on the forum-selection clause in the Terms and Conditions. The Defendants raise two additional arguments for dismissal: first, that Lavitman’s Wage Act claim (Count I) must be dismissed because he is not an Uber employee and therefore is outside the protection of that statute; and second, that Lavitman’s common-law claims (Counts II-IV) must be dismissed because they are preempted by the Wage Act’s comprehensive legislative scheme.
In deciding a motion to dismiss pursuant to Rule 12(b)(6), “the facts alleged in the . . . complaint are assumed to be true, and all reasonable inferences from those facts are to be granted to the plaintiff,” here Lavitman. Commonwealth v. One 2004 Audi Sedan Auto., 456 Mass. 34, 43 (2010). In addition to the complaint itself, the court may also consider “matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.” Schaer v. Brandeis University, 432 Mass. 474, 477 (2000). The court must “look beyond the conclusoiy allegations in the complaint,” Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 675 (2011), and determine if the plaintiff has pled “factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief.” Iannachino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (citation omitted).
I. Lavitman’s Wage Act Claim
The Wage Act creates a private right of action for “employee[s] claiming to be aggrieved by a violation of sections 33E, 52E, 148, 148A, 148B, 150C, 152, 152A or 159C or section 19 of chapter 151.” Mass. G.L.c. 149, §150. In this case, Lavitman’s claim rests on an alleged violation of §152A(d), which among other things requires an “employer or person” who collects a “service charge or tip” to remit the full amount of the tip to the “service employee” who performed the service.
The Wage Act defines an “employee” as “an individual performing any service . . . unless: (1) the individual i¿ free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and (2) the service is performed outside the usual course of the business of the employer; and, (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.” Mass. G.L.c. 149, §148B(a). This provision operates “to protect workers by classifying them as employees, and thereby grant them the benefits and rights of employment, where the circumstances indicate that they are, in fact, employees,” in accordance with the Wage Act’s “broad remedial purpose.” Depianti v. Jan-Pro Franchising Int’l, Inc., 465 Mass. 607, 621 (2013).
A “service employee” is a person who works in an occupation in which employees customarily receive tips or gratuities, and who provides service directly to customers or consumers, but who works in an occupation other than in food or beverage service, and who has no managerial responsibility." Mass. G.L.c. 149, §152A{a). The Massachusetts Attorney General has provided further interpretive guidance, explaining that “[e]xamples of service employees are hairdressers, taxicab drivers, baggage handlers and bellhops.” Advisory 2004/3, An Advisory from the Attorney General’s Fair Labor Division on an Act Protecting the Wages and Tips of Certain Employees. This interpretation is entitled to “substantial deference and [the court] will not disturb it where [it] is reasonable.” DiFiore v. American Airlines, Inc., 454 Mass. 486, 496 n.11 (2009).
In this case, the Defendants contend that Lavitman is an independent contractor, not an Uber employee, and therefore cannot maintain a claim under the Wage Act. They also contend that even if Lavitman is an Uber employee, he is not a “service employee” entitled to protection under § 152A. The Defendants support their position with a number of allegations related to the *480 nature of Uber’s business model, Lavitman’s ownership of an independent taxi company, Lavitman’s ability to determine his own work schedule and passengers, and Lavitman’s use of dispatch services other than the Uber App.
However, I cannot properly consider these “disputed issues of fact and extrinsic evidence ... at this early stage of the litigation.”[4] RFF Family Partnership, LP v. Link Development, LLC, 849 F.Sup.2d 131, 135 (D.Mass. 2012). It is the Defendants’ burden to prove that Lavitman meets all three prongs of the independent contractor test; it is not Lavitman’s burden to plead that he does not. Athol Daily News v. Bd. of Review of the Div. of Employment and Training, 439 Mass. 171, 175 (2003). Likewise, in light of the Attorney General’s interpretive guidance, it is the Defendants’ burden to prove that, unlike other taxicab drivers, Lavitman has managerial responsibilities oris otherwise disqualified as a service employee.[5] Therefore, viewing the facts in the light most favorable to Lavitman, the complaint does not fail to state a claim upon which relief can be granted with respect to Count I.
II. Lavitman’s Common-Law Claims
Lavitman also claims that, due to Uber’s practice of keeping a portion of the service fee, he has suffered tortious interference with the advantageous tipping relationship between himself and his passengers (Count II); Uber has been unjustly enriched (Count III); and Uber has breached an implied contract to remit to him the full service fee (Count IV). The Defendants argue that all three of these claims must be dismissed under Melley v. Gillette Corp., 19 Mass.App.Ct. 511 (1985), because they are duplicative of Lavitman’s claim under the Wage Act, and there can be no common-law claims of the sort where the legislature has enacted a comprehensive statutory scheme to protect employees’ wages.
However, the Defendants’ reliance on Melley is mistaken. In Lipsitt v. Plaud, 466 Mass. 240 (2013), the Supreme Judicial Court ruled that the Wage Act does ■ not preempt common-law public policy claims for unpaid wages, despite the existence of the comprehensive statutory scheme found in the Wage Act.[6]
In addition, Lavitman’s common-law claims advance the Commonwealth’s strong public policy favoring the proper payment of employees, including reserving tips and other service charges for the employees who perform the services. Lipsitt, 466 Mass. at 248 (Wage Act “was designed to enhance the rights of employees with respect to the payment of wages”) (emphasis in original). Therefore, by the reasoning in Lipsitt, Lavitman’s three common-law public policy claims for unremitted tips can be coupled with his Wage Act claim and cannot be dismissed as duplicative.
The Defendants also argue, with respect to Counts II and III, that Lavitman has not pled sufficiently detailed factual allegations. However, Mass.R.Civ.P. 8(a) does not require Lavitman to plead facts related to every element of every claim; it only requires “a short and plain statement of the claim showing that the pleader is entitled to relief.” The “purpose of this requirement is to give fair notice of the claim to the parties.” Bank v. Thermo Elemental, Inc., 451 Mass. 638, 665 (2008). Even under the more stringent “particularity” requirement of Mass.R.Civ.P. 9(b) — which does not govern the claims in these two Counts — a plaintiff is not required “to set out in detail all of the facts upon which he bases his claim, nor ... to plead detailed evidentiary matter[s].” Lazarro v. Holladay, 15 Mass.App.Ct. 108, 110 (1983). The allegations in the complaint as to Counts II and III are sufficient to give the Defendants “fair notice” of the claims against them, and accordingly those Counts cannot be dismissed.
ORDER
For these reasons, Defendants’ Motion for Partial Summary Judgment (Paper No. 30) is DENIED, and Defendants’ Motion to Dismiss or, in the Alternative, to Transfer (Paper No. 7) is also DENIED. The Joint Motion of the Parties to File Documents Under Seal (Paper No. 31) requires a hearing under Trial Court Rule VIII, and that hearing will be held in Courtroom 1015 (not Courtroom 1008) at Suffolk Superior Court at 2:00 P.M. on February 9, 2015. The parties are to file the affidavit required by that rule if they have not already done so, and a proposed form of the findings required by that rule as well.

Counsel for Lavitman suggested that Uber’s counsel was being overly generous to Uber’s position even in this concession; there is no factual dispute at all, she asserted, because all the facts in the summary judgment record on this point support Lavitman’s position that he agreed only to the terms of the written Partnership Agreement (which did not contain a forum selection clause) when he signed up with Uber. I need not decide if she is right, because Uber has conceded, and I have found, that Lavitman has presented facts that preclude the entry of summary judgment in Uber’s favor based on the original registration.

I have not converted these aspects of the motion to dismiss into a summary judgment motion, because, unlike the forum selection clause issue (1) these arguments depend on many facts rather than a few, and therefore their resolution would benefit from full development of those facts through discovery; and (2) a decision in Uber’s favor on these issues would not result in this case being litigated in a different forum.

I also note that these aspects of the Wage Act are currently in flux. On January 8, 2015, the Supreme Judicial Court heard oral argument in the case of Sebago v. Tulunjian, SJC-11757, which raises similar issues about the employment classification of taxi drivers by taxi companies. Accordingly, and given that today’s case is still in the early stages of litigation before this court, it is prudent to allow the case to proceed while awaiting a decision that may significantly impact the controlling law.

To be fair to Uber, when it filed its motion to dismiss during the sojourn of this case in federal court, the Supreme Judicial Court had not yet issued its decision in Lipsitt.