Wilson, Paul D., J.
Plaintiffs are four individuals who worked or formerly worked as waitstaff employees in the Prudential Center restaurant of Defendant Legal Sea Foods, LLC (“Legal”). Plaintiffs allege that Legal has violated the Massachusetts Tips Statute, M.G.L.c. 149, §152A, through the practice of having waitstaff employees share tips with employees whose sole job is to roll silverware into napkins (“rollers”), and who do not wait on customers or clear their tables. Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated. Plaintiffs recently served a motion for class certification, and at yesterday’s injunction hearing, by agreement of the parties, I extended the deadline for Legal’s response to November 21, 2014.
Because of recent events that began on October 24, 2014, and are described below, Plaintiffs now seek a preliminary injunction preventing Legal from engaging in settlement discussions with individual employees or former employees who would be members of the Plaintiff class, if the class were to be certified. On October 27, 2014, after an emergency hearing attended by counsel for both parties, I orally issued a temporary restraining order, which was reduced to writing October 28, 2014. As I said at the time, I did so simply to maintain the status quo until both sides could fully brief the issues raised by Plaintiffs’ request, and present affidavit evidence.
The parties then exhaustively briefed the issues discussed below, and submitted affidavits. I heard oral argument on the preliminary injunction motion on November 5, 2014. After a review of the various submissions, I will issue a preliminary injunction, although narrower in scope than sought by Plaintiffs.
Background
Plaintiff filed this lawsuit on March 28, 2014. The parties soon entered into an agreement to stay formal discovery so they could discuss settlement. Those discussions resulted in the scheduling of a mediation session on December 9, 2014. It appears that this mediation session will concern the rights of the putative class members as well as those of the four named Plaintiffs. In light of the settlement discussions and the stay of discovery, Plaintiffs did not move for class certification until very recently.
For reasons unrelated to this lawsuit, Legal now intends to close its Prudential Center restaurant at the end of 2014, because it has not been able to reach an agreement with its landlord to extend its expiring lease. On October 24, 2014, Legal announced these plans to all Prudential Center restaurant employees, including the waitstaff members of the putative class, by memo. In the memo, Legal offered all employees the opportunity to transfer to other Legal restaurants if they wished, and offered to make retention payments, in addition to their normal compensation, to employees who continued to work at the Prudential Center restaurant until it closed during last week of 2014. The memo said that Human Resources Department employees and other managers would speak personally with employees at the restaurant over the next several days about the closure, the transfer option, and to “address other questions.” The memo made no mention of this putative class action, or any payments that Legal would make to putative class members who wished to settle any claims arising out of the practices attacked in the Complaint.[1]
Over the next two days, a Saturday and Sunday, Legal’s human resources employees and other managers met with individual employees at the restaurant, primarily as the employees arrived to begin their shifts. The parties agree that the weekend is the time of the week when the largest number of employees would be present at the restaurant.
Both parties submitted affidavits about the nature of these individual discussions between putative class member employees and Legal’s representatives. The dueling affidavits agree in general about how these individual meetings proceeded.
The Legal manager or human resources representative (the “Representative of Legal”) began by explaining the upcoming closure of the restaurant and the opportunity to transfer to another location. The Legal representative then offered a retention payment if the employee stayed to the end of the restaurant’s life in the Prudential Center, stating the amount of the retention payment (which only two employees stated in their affidavits; one employee was offered $1,447, and the other was offered $1,850).[2]
At some point the Representative of Legal presented the employee with a letter addressed to that employee individually. This letter officially notified the recipient of the closure, described the transfer option and procedure and paperwork provided at the meeting, and suggested that there would be further discussions on these topics. This letter, too, made no mention of this class action, or any payments that Legal would make to putative class members arising out of the practices attacked in the Complaint.[3]
If the employee was a member of the putative class in this case, the Representative of Legal then moved on to that topic, the parties agree. The Representative of Legal first presented the employee with a one-page *377 document entitled “Acknowledgment of Pending Class Action and Voluntary Consent.”[4] That document informed the putative class member employee of the existence of this lawsuit, giving its caption and docket number. It described in one sentence the central allegation of this lawsuit, and stated that the Plaintiffs “seek to recover the tips that were paid to the rollers, restitution for the full Massachusetts minimum wage, penalties, interest, attorneys fees and costs.” The document did not mention treble damages, or say that they were mandatory under the Tips Statute.
The document further informed the putative class member employee that his or her participation in this portion of the meeting was entirely voluntary, that this issue was separate from the retention payment issue, and that Legal would not retaliate against the employee for choosing not to discuss the issue. The Representative of Legal then asked the putative class member employee if he or she wanted to sign the Acknowledgment and have a conversation about this lawsuit. The record does not disclose how many putative class member employees were presented with this document, or how many of them decided to have a conversation (or not have a conversation) with the Representative of Legal.
If the putative class member employee signed the Acknowledgment the Representative of Legal then presented the putative class member employee with a five-page document entitled “Closing Retention Compensation and Release Agreement” (the “Release”).[5] Attached to the Release was copy of the Complaint in this case.[6]The Representative of Legal made clear to the putative class member employee that the employee was free to take the Release away with him or her, and to sign and return it within Hie next 14 days, if the employee wished. This offer of 14 days to consider the matter was also laid out in the Acknowledgment signed by each putative class member at the beginning of the discussion of this topic.
The Release briefly described the allegations in this lawsuit and stated that Legal disagreed with those allegations. Neither release nor any other written document mentioned that this lawsuit would be mediated, on a class-wide basis, on December 9, 2014. It appears undisputed that no Representative of Legal informed any putative class member employee of this upcoming mediation.
The Release stated that the employee would be paid a retention payment “in exchange for a release and the other promises and covenants set forth in this Agreement.” Release 111(A). The release then offered the putative class member employee an “ADDITIONAL PAYMENT’ in exchange for an additional release of the claims raised in this lawsuit, and described the amount of the additional payment that Legal was willing to make for this additional release. Release 111(B). In the specimen release, from which the employee’s name has been redacted, Legal offered an additional payment for release of that employee’s claims in this lawsuit of $3,741.86, which would net, after deductions, to $2,500.00. Release 111(B).
According to one of the Plaintiffs’ affiants,[7] during this portion of the discussion the Representative of Legal had a check with her name on it on top of his paperwork.[8] Afanasyeva Aff. 1113. Two of the other affiants stated that, during this portion of the meeting, the Representative of Legal “pulled out a check for $1,750 . . . and said . . . you can take the check right now, you can cash it right now,” Pires Aff. ¶8, or offered “this check for $2,500 right now.” Braska Aff. ¶6.[9] None of the Representatives of Legal deny in their affidavits that they presented settlement checks to putative class members during this portion of the discussion. I take it as a fact that they did present checks on the spot to those who were willing to settle their claims in this case, because I would have expected denials in the supplemental affidavits submitted by two of these Representatives of Legal at the injunction hearing yesterday, in which they vociferously dispute many of the other things said by Plaintiffs’ affiants about these meetings.
The Release offered the putative class member employee a chance to elect one of three payment options: election of “BOTH RETENTION/CLOSING PAYMENT & PAYMENT TO SETTLE CLARK CASE CLAIMS”: or election of “RETENTION/CLOSING PAYMENT ONLY’; or an election of “PAYMENTTO SETTLE CLARK CASE CLAIMS ONLY.” Release 11(C). The language of the release itself, which took up more than one page, single-spaced, released all claims, specifically including those under the Massachusetts Tips Statute “(including all claims raised or that could have been raised in the Clark Case, UNLESS EXCLUDED BY EMPLOYEE’S ELECTION IN SECTION 1.C.2 ABOVE).” Release 13. Later in that release, it was stated, “It is expressly agreed and understood that this release is a GENERAL RELEASE (UNLESS LIMITED BY EMPLOYEE’S ELECTION IN SECTION 1.C.2 ABOVE).” Release 13.
The record does not indicate how many of the putative class member employees were presented with this Release. Various Representatives of Legal who submitted affidavits state that every putative class member employee to whom they presented the Release chose to accept both payments, and nearly all of them made that decision and signed the Release on the spot.
Three of the putative class member employees who signed the Release later had second thoughts. Plaintiffs have now submitted affidavits from those three employees, in which they state that they signed the Release and accepted a settlement check because of pressure they felt during their meetings with Representatives of Legal. All say that they felt pressured by their need to get to work to set up or to begin their shifts. I accept this testimony, despite the fact that Legal has submitted affidavits from other employees who say that they did not feel this sort of pressure when they met with Representatives of Legal on the same days.
One of Plaintiffs’ affiants says that another reason she signed is that “the meeting also involved the restaurant *378 closing, my retention, and whether I would be transferred to another store, [so] I felt like I needed to sign, or else I might not keep my job (or that I might just get laid off when the restaurant closed).” Braska Aff. ¶8. Another said that she signed, in part, “because I was ’ afraid it would impact my employment, and my ability to get a transfer to another location now that my restaurant was closing.” Pires Aff. ¶10. I accept this testimony as well, even though Legal has presented affidavits from other employees who say that they did not feel this iype of pressure in these meetings.
Finally, Plaintiffs affiants describe statements by the Representatives of Legal suggesting that they should sign the Release and accept the check on the spot, as well as, in two cases, predictions by these Representatives of Legal about how long this lawsuit would take to resolve and about how small any ultimate recovery might be if there were to be such a recovery. Legal has submitted affidavits from these Representatives of Legal in which they vehemently deny making any such statements, or putting any pressure on any putative class member employees to decide on the spot. This raises a question of fact which I cannot resolve at this stage. For purposes of this motion, I will ignore any statements from Plaintiffs’ affiants about such alleged statements by Representatives of Legal.
Plaintiffs’ counsel heard about these meetings, and the fact that members of the putative class were releasing their potential claims, on Sunday, October 26, 2014. Plaintiffs filed an emergency motion for a temporary restraining order the next day, and I issued such an order for the reasons I describe above.
Analysis
Plaintiffs now seek a preliminary injunction enjoining Legal from having settlement communications with employees who are part of the putative class in this case until the court has ruled on Plaintiffs’ pending motion for class certification. Plaintiffs have served a motion for class certification, which will be fully briefed in approximately two weeks. Plaintiffs also ask that the releases already obtained be invalidated.
Under Mass.R.Civ.P. 23(d), ‘The court at any stage of an action under this rule may . . . impose such terms as shall fairly and adequately protect the interests of the class in whose behalf the action is brought or defended.” This rule expressly authorizes the court to act in this regard at any time during the case, not just after the class is certified. Mendez v. Job Done, LLC, Middlesex Superior Court Civil Action No. 12-4992 (Memorandum of Decision and Order dated March 3, 2014),[10] slip op. at 5-6. In Mendez, a case which resembles this one in important respects, Judge Krupp stated that he could not find any Massachusetts decisions specifically on point, and the parties to this case agreed at oral argument that there probably are no such reported Massachusetts cases. However, for the proposition that the court has the authority under Rule 23 to limit contacts with putative class members even before a class is certified, Judge Krupp cites to federal cases interpreting the cognate federal rule in that fashion. I find those cases, and Judge Krupp’s analysis, persuasive.
In Mendez, Judge Krupp found that the Defendants acted “coercively” in obtaining releases of class claims from putative class members, “doing so in a manner that requires quick action by employees who were seemingly vulnerable for a number of reasons.” Id, at 7. Judge Krupp was particularly concerned that the employees in that case had “simply signed the settlement documents because they were willing to take the additional money and wanted to keep their jobs.” Id, He was also troubled that “Defendants may not have adequately disclosed the factual basis for Plaintiffs class claims, including the fact that treble damages would be required under the applicable statute.” Id, at 8.
Counsel in this case are behaving in a professional and civil fashion, and have been rightly reluctant to level accusations of deliberate “coercion” (although much has been said, and appropriately so in light of the case law, about inherent “coercion”). Plaintiffs’ counsel instead points to four factors which, she says, require me to protect the putative class members from further settlement discussions with Legal until the issue of class certification is resolved. I agree with Plaintiffs that these four factors, and others I mention below, collectively suggest that I should issue a preliminary injunction restricting communications between Legal and potential class members, as requested by Plaintiffs.
The first factor is that the putative class members are without Legal counsel because a class has not yet been certified, and Plaintiffs have not moved for class certification because of the settlement discussions. It is the policy of the Superior Court to encourage parties to resolve their differences, rather than to litigate, whenever that is possible. As a result of Plaintiffs’ willingness to do that here, putative class members are not yet represented by class counsel, and are now being asked to settle potential claims for small amounts of money before they know much about those claims. To its credit, Legal has been careful to offer them 14 days to consult with counsel, but, given the incomes of the putative class members, that right is probably illusory in most cases — as indicated by the fact that an overwhelming majority of putative class members settled their claims on the spot.
The second relevant factor is that Plaintiffs bring their claim under the Tips Statute, which is found in the Wage Act. That statute specifically provides that employees such as Plaintiffs may bring claims on behalf of other similarly situated employees. M.G.L.c. 149, §150; c. 151, §20. The Supreme Judicial Court has “consistently held that the legislative purpose behind the Wage Act (and especially the ‘special contract’ language) is to provide strong statutory protection for employees and their rightto wages.” Crocker v. Townsend Oil Co., 464 Mass. 1, 13 (2012). The *379 “special contract” reference in Crocker is to the legislative prohibition in the Wage Act against an employer avoiding its obligations under that law “by a special contract with an employee or by any other means.” M.G.L.c. 149, §152A(g). The Supreme Judicial Court recently described the purpose of this “special contract” prohibition as intending “to thwart... schemes” to avoid compliance with the Wage Act. DiFiore v. American Airlines, Inc., 454 Mass. 486, 497 (2009).
Plaintiff suggests that I could regard the Release as such a “special contract,” but I decline to do so on the only-partially-developed factual record before me. Instead, I rely on the legislature’s concern about such contracts, and its express and relatively unusual authorization of class action suits under the Wage Act, as evidence of the legislative intent that a court be particularly sensitive to protect the rights of employees, and specifically of potential class member employees, with regard to Wage Act claims. It is this particular sensitivity which persuades me to adopt the reasoning of Judge Krupp in Mendez, and of Judge Connors in another Superior Court Wage Act case, Marchado v NECCS, Inc., Norfolk Superior Court Civil Action No. 2010-555 (Ruling dated April 11, 2012).[11] This factor also makes me discount to some extent the cases cited by Legal in opposition to the injunction request, almost all of which concern potential class actions that did not involve the Wage Act, or even the employment context.
The third relevant factor is the manner in which Legal discussed settlement, obtained signatures, and presented checks to its putative class member employees. It is likely that many of the putative class member employees had no knowledge of this lawsuit; indeed, one of Plaintiffs’ affiants specifically says that she had no idea there was such a dispute or lawsuit until the Representative of Legal told her in their meeting on Saturday October 25. Afanasyeva Aff. ¶13. Whether or not they knew about this lawsuit, the putative class member employees were presented with the position of their employer about that suit, and the opportunity to resolve it, in a suddenly-called, mandatory meeting, as they reported to work, when at least some of them were feeling the pressure to get onto the restaurant floor to prepare for or begin their shifts. While they were given 14 days to think about what to do, they were also tempted by checks, unexpectedly produced by the Representative of Legal, which they could obtain simply by signing away rights to a lawsuit they were unfamiliar with. The fact that almost every putative class member employee accepted on the spot indicates the power of that temptation.
The flip side of that temptation is the inherent coercion when an employer gives the employee the choice of accepting an unexpected check or, alternatively, joining in a lawsuit against that employer. The cases are legion which recognize the inherent coercion in the employer-employee relationship. Indeed, the Supreme Judicial Court has specifically said, in the Wage Act context, that the class action provision of that law arises from the legislative desire “to allow one or more courageous employees the ability to bring claims on behalf of other employees who are too intimidated by the threat of retaliation and termination to exercise their rights under the Wage Act.” Machado v. System 4, LLC, 465 Mass. 508, 515 n.12 (2013).
The fourth relevant factor is that, given the impending closure of the restaurant, the threat of retaliation and termination would be in the veiy front of the mind of every putative class member. Legal chose to have the settlement discussion immediately after a discussion concerning the unsettling prospect, fresh news to the employee, that the restaurant was about to close, and he or she should start thinking about a transfer, with no guarantee that all transfer requests to particular restaurants could be accommodated. Legal was careful to promise every employee continued employment at some restaurant or other. But it would not be surprising if the employees might fear that, despite what Legal said, continued employment might well be conditioned upon releasing the claims brought in this lawsuit — particularly given that the discussion about the Release followed close on the heels of the discussion of the closure of the restaurant. Even if the employee did not fear loss of employment, the employee might well fear that those who released their claims would get first preference in transfers to the more desirable locations, perhaps those closest to the Prudential Center. Thus, the manner in which Legal entered into the settlement discussions with the putative class members simply exaggerated, in this particular case, the inherent coercion involved in any discussion between employer and employee in the normal case.
Finally, I find it significant that Legal withheld certain relevant information from the putative class employees when it asked them to sign the Release. First, it appears undisputed that the putative class employees were not informed that Legal had been discussing a class-wide settlement with Plaintiffs’ counsel for months, and a mediation was scheduled six weeks down the road. While Legal is correct that the mere scheduling of a mediation does not mean that the case would settle, it was certainly a sign of progress, which the putative class member employees were entitled to know about before they signed away their rights for small amounts of money.
Second, Legal did not clearly inform the putative class member employees that, if Legal had violated their rights, they were entitled to mandatory treble damages under the Wage Act. Legal responds that it attached a copy of the Complaint to the Release, and the Complaint mentions, in one of the eight prayers for relief, that Plaintiffs seek “Statutory trebling of all damages.” It is not likely that many of the putative class member employees read the Complaint word for word with the Representative of Legal sitting there expectantly, or that they would even recognize the importance of the phrase “Statutory tre *380 bling of all damages.” Worse yet, in describing the relief sought by Plaintiffs in this lawsuit (in the Acknowledgment form that the employee signed at the outset of the settlement discussion — a form much more likely to be fully reviewed by the employee, because it was only one page), Legal did not mention treble damages, substituting the word “penalties,” a word that certainly does not suggest that individual employees might be awarded multiple damages.
In summary, I find that Plaintiffs have established a likelihood that they will succeed on the merits of their claim that the putative class member employees need the protection of an injunction against unilateral communications about releasing their potential rights in this lawsuit. I also find that Plaintiffs have established irreparable harm, namely the possibility that putative class members will release rights, recognized as fundamental to all employees by our legislature, without fully understanding those rights or their potential recovery if Legal is found to have violated those rights. The balance of harms, I find, favors issuance of an injunction, because Legal’s counsel could not point to any practical difficulties that an injunction would present, beyond the mere delay in reaching settlements of this case with employees.
The injunction sought by Plaintiffs is narrowly tailored, allowing Legal to continue to talk to its putative class member employees about any subject other than settlement of this case. Indeed, the injunction would not preclude Legal from discussing the merits of this case with punitive class members for purposes of responding to the pending motion for classification. The delay in settlement discussions will be short, extending only until the day that the class action certification motion is resolved.
Plaintiffs also ask that I invalidate the Releases already signed by putative class members. However, I decline to do that at this stage, because that decision would require a full record, and perhaps an evidentiary hearing with regard to each of the signed Releases. In addition, the employees who signed the Releases are not parties to this lawsuit, and, if class certification is denied, may never be parties. Any proceedings about the validity of the already-signed Releases should await the resolution of the class certification question.
PRELIMINARY INJUNCTION
For the reasons set forth above, after a hearing, I issue the following preliminary injunction:
1. Defendant Legal Sea Foods, LLC, together with its owners, employees, attorneys, and agents, is hereby enjoined from having any settlement communications with workers who are part of the putative class in this case, namely all other individuals who have been waitstaff employees at the Legal Sea Foods restaurant at the Prudential Center at any time since March 28,2011, and have shared portions of their gratuities with non-waitstaff employees and/or who have been paid an hourly rate that is less than the Massachusetts minimum wage (including individuals who have held the positions of server and bartender) (hereinafter “Covered Workers”) until the court has ruled on Plaintiffs’ pending motion for class certification.
2. For purposes of this order, “settlement communications” means any oral or written communications regarding the payment of any money based on the allegations made in this case, or the release and/or waiver of any claims arising from the allegations in this case. Until the court has ruled on Plaintiffs’ pending motion for class certification, Defendant shall not enter into any settlement agreements with any Covered Workers relating to the claims in this case. This Order shall not preclude Defendant from discussing the merits of the case with non-represented Covered Workers for purposes of responding to Plaintiffs’ motion for class certification.

Because of photocopying problems brought on by the speed with which this injunction request has proceeded, the record does not appear to contain a complete copy of this memo. Pages 1 and 3 of the memo are found at Exhibit 3 to Plaintiffs’ Motion for Injunction. My description of the memo in this Memorandum of Decision is based on how both counsel have described it at oral argument and in their briefs. The parties agree about the substance of this memo, and its details are irrelevant to my decision, except as described in this paragraph.

See affidavits of Anastasia Afanasyeva and Brenda Pires, found in Exhibit 6 to Plaintiffs’ Motion for Injunction.

His letter is found at Exhibit 4 to Plaintiffs’ Motion for Injunction.

This document is Exhibit H to the Affidavit of Douglas J. Hoffman in Support of Defendant’s Opposition to Plaintiffs’ Motion for Preliminary Injunction (the “Hoffman Affidavit”).

That document is Exhibit I to the Hoffman Affidavit.

Plaintiffs’ counsel first asserted that the copy of the Complaint attached to the Release lacked the last page, which includes the signature block for Plaintiffs’ counsel. At the injunction hearing yesterday, Plaintiffs’ counsel withdrew that argument, noting that a misunderstanding had arisen based on someone’s accidental photocopying of only every other page of a two-sided document.

Plaintiffs’ three affiants are not among the named Plaintiffs in this case.

This affiant says that this check was on top of the paperwork “(a]ll throughout our conversation.” The Representative of Legal with whom she conferred, however, states that this is false, and that he did not mention anything about a settlement check until she had signed the Acknowledgment form, and they began to discuss this lawsuit Runkel Supp. Aff., attached to Supplemental Affidavit of Douglas J. Hoffman, ¶13.1 cannot resolve this factual dispute at this point, but for purposes of this motion, I will accept Legal’s view of the facts.

These affidavits are all found in Exhibit 6 to Plaintiffs’ Motion for Injunction.

This decision is Exhibit 8 to Plaintiffs’ Motion for Injunction.

 Nhis Ruling is Exhibit 9 to Plaintiffs’ Motion for Injunction.